166 P.3d 1219 (2007)
Michael S. JONES, R.Ph., Respondent,
v.
STATE of Washington; State of Washington, Department of Health; State of Washington, Department of Health, Board of Pharmacy; Phyllis Wene; and Stan Jeppesen, individually and as investigators for the Washington State Board of Pharmacy and Donald Williams, individually and as executive director of the Board of Pharmacy, Appellants.
No. 57850-2-I.
Court of Appeals of Washington, Division 1.
June 4, 2007.
Publication Ordered September 17, 2007.
*1221 Catherine Hendricks, Assistant Attorney Gen, John Robert Nicholson, Attorney at Law Seattle, WA, for Appellant.
D. Murphy Evans, Brownlie Evans Wolf & Lee LLP, Bellingham, WA, for Respondent.
AGID, J.
¶ 1 Michael Jones purchased a pharmacy franchise in Marysville, obtained a pharmacy license for it, and became its sole licensed pharmacist. From 1996 through 2000, the Washington State Board of Pharmacy (Board) inspected Jones' pharmacy on several occasions. Because he received two consecutive unsatisfactory inspection scores and had violations the Board found were an immediate danger to the public, it summarily suspended Jones' licenses. He eventually entered into a stipulated order agreeing to a five year suspension of his pharmacy license. Jones later sued the Board, Donald Williams, the Board's Executive Director, and investigators Phyllis Wene and Stan Jeppesen for numerous torts and violation of his civil rights under 42 U.S.C. § 1983. On summary judgment, the trial court denied the Department of Health's (Department) motion to dismiss Jones' claims and ruled that none of the individual defendants were entitled to immunity. We granted discretionary review of these rulings.
¶ 2 We hold there was no basis in law to deny immunity to the individual defendants. Williams, who functioned as a prosecutor when filing the summary suspension and statement of charges against Jones, was entitled to absolute immunity. Because Jones failed to establish any violation of a constitutional right, Wene and Jeppesen should have been granted qualified immunity and the section 1983 claims dismissed. Finally, the trial court erroneously denied the Department's motion for summary judgment on the state law torts because Jones failed to exhaust available administrative remedies.
¶ 3 We therefore reverse and remand for entry of an order granting the Department's motion dismissing Jones' suit.

*1222 FACTS
¶ 4 In 1995, Michael Jones, a licensed pharmacist, purchased a pharmacy franchise, The Medicine Shoppe, and obtained a pharmacy license. Jones was the only licensed pharmacist at this pharmacy. On December 17, 1998, the Board inspected The Medicine Shoppe and gave it a failing inspection score of 79. This inspection uncovered the following violations:
[1] Failing to obtain chronic conditions on patients of the pharmacy;
[2] Dispensing the majority of prescriptions in non child-resistant containers without a written request from either the patient or the prescriber;
[3] Various records required by state and federal law were either inaccurate, incomplete or not available;
[4] There was a box of filled prescription containers, many unlabeled, on the floor of the pharmacy.
[5] Investigator Wene discovered a prescription filling error in the will call area. . . . ;
[6] Many of the prescriptions in the will call area had labeled expiration dates exceeding the manufacturer's expiration date;
[7] Most of the prescriptions in the will call area contained the incorrect NDC number for the product in the prescription container[.]
Board of Pharmacy Investigator Phyllis Wene reinspected the pharmacy on February 3, 1999, and gave it a passing score of 94. The inspectors deducted points for inaccurate, incomplete or missing records.
¶ 5 On July 12, 1999, Inspectors Wene and Stan Jeppesen inspected The Medicine Shoppe and gave it an unsatisfactory score of 48 for the following violations:
[1] Failing to obtain chronic conditions and allergies on patients of the pharmacy. Disease state management . . . not readily readable by the Pharmacist[;]
[2] Numerous (greater than 10) prescriptions were labeled with a different generic product than indicated on the label or NDC Code. Several of these prescriptions were dispensed in the presence of Board of Pharmacy Investigators[;]
[3] Dispensing the majority (in excess of 90%) of prescriptions in non child-resistant containers without a written request from either the patient or the prescriber for non child-resistant packaging[;]
[4] Thirty-eight (38) drug products were outdated. Of those, 18 drugs were legend or controlled substances and 20 were OTC products[;]
[5] Various records required by federal law (DEA [Drug Enforcement Administration]) were either inaccurate, incomplete or not available. DEA order forms and invoices could not be reconciled. Respondent was unable to locate several required DEA forms. There was poor organization of DEA inventory records, including nonsequential filing. Several DEA records did not include date and amount received on DEA 222 forms[;]
[6] DEA Inventory incomplete, DEA inventory for Schedules III-V was missing. Respondent was unable to generate reports for Schedule II drugs. The daily refill reports were not signed, stored in various locations, out of sequence, with several months not located[;][[1]]
[7] Facts and Comparisons, the only reference source in the pharmacy, had not been updated for at least nine (9) months[;]
[8] Pharmacy Assistant did not have a name badge and none had been ordered. No Pharmacy Assistant certificate has been generated or signed. Modifications to the Pharmacy Assistant Utilization Plan were in place without Board approval[;]
[9] The prescription records were inaccurate, missing and poorly organized. Examples include prescription files with non-sequential order. Several prescriptions, both C-II and other drugs were unaccounted for. Prescription files were kept with no organization. Respondent Jones *1223 was unable to locate files in a timely manner[;]
[10] Minimum procedures for utilization of the patient medication system were inadequate[;]
[11] During the inspection, patient returned a prescription so that Respondent Jones could correct the instructions for use. The correction was made but no audit trail of the change was entered in the pharmacy computer[;]
[12] The pharmacy was generally disorganized and dirty. The pharmacy sink and immediate area were dirty and with numerous dirty food dishes.
¶ 6 Wene and Jeppesen reinspected the pharmacy on August 10, 1999, and gave it another unsatisfactory score of 56 based on several wrongly filled prescriptions and the following non-exhaustive list of violations:
[1] Six prescriptions selected randomly in the will call area did not have allergy or chronic conditions noted in the patient profile. The disease state  drug interaction fields [on the computer] had been turned off. Respondent Jones was unable to explain the purpose or the clinical significance of the clinical interaction levels that appeared for drug interaction messages[;]
[2] Three prescriptions selected randomly from the will call area were labeled with a different generic product than indicated on the label and/or NDC Code[;]
[3] Forty-one (41) prescriptions were located in the will call area. Of those, forty (40) were packaged in non child-resistant containers and the one that was in a child resistant container was in a container supplied by the manufacturer[;]
[4] Eleven legend or controlled substances on the shelf were beyond the manufacturer's expiration date[;]
[5] As in the July 12, 1999 inspection, various records required by federal law (DEA) were either inaccurate, incomplete or not available. . . .
[6] DEA Inventory records were incomplete. . . .
[7] Five prescriptions which had been filled and returned to the stock area were checked for accuracy of product on the label and against correct NDC numbers. All five prescriptions failed to comply with state and/or federal law. . . .
¶ 7 On August 16, 1999, Board of Pharmacy Executive Director Donald Williams filed a statement of charges and an ex parte motion for an Order of Summary Suspension of Jones' and The Medicine Shoppe's licenses and with the Board of Pharmacy. The next day, the Board granted the summary suspension motion, and Wene served Jones with the Statement of Charges, Ex Parte Order of Summary Action and a Notice of Opportunity of Settlement and Hearing.
¶ 8 On August 30, 1999, Jones filed a Motion to Modify and Stay the summary suspension, contesting the allegations. To support this motion, he filed his own declaration and one from his attorney which stated that the inspectors acted unprofessionally during their inspection and assured the Board of Pharmacy that he held his patients' safety in the highest regard. He argued that, while he may have been disorganized, his actions did not constitute unprofessional conduct or represent any threat to the health, safety, or welfare of his customers. He also claimed that portions of the inspection report were inaccurate. For example, he asserted the August 1999 report penalized him twice for prescriptions without proper NDC numbers because those same prescriptions had been in the pickup bin since the time of the first inspection. He maintained that his record-keeping on non child resistant caps may have been difficult to verify but did not pose a safety concern. He demanded immediate reinstatement of his licenses in order to avoid severe financial hardship. Effective August 31, 1999, The Medicine Shoppe International terminated Jones' franchise because of the summary suspensions.
¶ 9 On September 2, 1999, the Presiding Officer conducted a telephone conference with the parties. During this conference, Jones asked the Board to consider his motion as soon as a meeting time could be arranged, but he elected not to present oral argument. The Presiding Officer told Jones that by filing a written motion he had waived his right to the prompt hearing set for September *1224 10, 1999, but he could move for an expedited hearing if his motion was denied.
¶ 10 On September 7, 1999, a three member panel of the Board denied Jones' motion, finding that he had committed serious violations by operating the pharmacy below the standard of care. The Board ruled that the summary suspension would remain effective because Jones had a history of violating pharmacy laws, correcting those violations, and later violating other pharmacy laws.
¶ 11 On September 13, 1999, Jones petitioned for an expedited hearing, asserting that he would suffer financial ruin if he could not resolve the matter and immediately reopen his pharmacy. In his motion, Jones acknowledged that he was no longer entitled to have the matter heard on the prompt hearing calendar. The Department objected to his request to set the matter outside the Board's regularly scheduled hearing dates because he had waived his right to a prompt hearing. Although the Board's Presiding Officer granted Jones' motion and scheduled the hearing for October 21, 1999, he also noted that Jones had waived his right to a prompt hearing in his Answer.
¶ 12 On September 22, 1999, Jones requested an immediate settlement conference to resolve the charges. The parties met at an October 13 prehearing conference, at which time another prehearing conference was set in order to allow the Department time to amend the Statement of Charges against Jones. The Department also moved for a continuance to the Board's next regularly scheduled meeting on December 2, 1999. Jones opposed the motion on the ground that additional delay would cause him greater financial hardship. The Presiding Officer granted the Department's motion to continue because the later hearing date would further judicial economy by allowing joinder of additional pending charges. The Presiding Officer also ruled that Jones' actions were a risk to the public. He rescheduled the hearing to the Board's next meeting date. A new prehearing conference was scheduled for November 11, 1999.[2]
¶ 13 On January 11, 2000, Jones entered into Stipulated Findings of Fact, Conclusions of Law, and an Agreed Order, under which he agreed that the facts contained in the investigators' reports from December 1998, July 1999, and August 1999 constituted unprofessional conduct. Under the terms of the order, the Board revoked Jones' pharmacy license for The Medicine Shoppe and suspended his professional license for five years from February 17, 2000.[3]
¶ 14 Jones filed a complaint in Snohomish County Superior Court against Executive Director Williams, investigators Wene and Jeppesen, the State, the Department of Health and the Board of Pharmacy seeking injunctive relief and monetary damages for negligence, reckless investigation, tortious interference with a business expectancy, and violation of his due process rights under 42 U.S.C. § 1983. The Department moved for summary judgment, arguing that Executive Director Williams was entitled to absolute prosecutorial immunity and that all individual defendants were entitled to qualified immunity on Jones' civil rights claims. It moved for summary dismissal of all of Jones' state law claims because he had agreed to the license suspension and waived additional hearing rights when he signed the stipulated order. The Department also filed a motion to strike portions of Jones' declarations as hearsay. These included Jones' rendition of out-of-court statements by pharmacists Sharla Keeling and Claudia Tomlinson and conversations between his attorney, Bernie Bauman, and members of the Board.
¶ 15 The court partially granted the Department's motion for summary judgment, dismissing Jones' claims for negligent investigation and injunctive relief.[4] But it denied *1225 the Department's motion on the remaining claims, ruling that the defendants were not entitled to absolute or qualified immunity and that the stipulation did not preclude Jones from asserting tort claims against the Department. The trial court granted the Department's motion to strike the hearsay portions of Jones' declaration. But, it said it would consider portions of his declaration as "background." On February 13, 2000, the Department filed a motion for reconsideration. On May 17, 2000, the trial court granted the Department's motion in part, dismissing Jones' claim for recklessness based on his agreement that the claim should be dismissed. We granted discretionary review of the court's rulings on immunity and Jones' remaining state tort law and 42 U.S.C. § 1983 claims.

DISCUSSION
¶ 16 We review summary judgment orders de novo, making the same inquiry as the trial court and considering all facts and reasonable inferences in the light most favorable to the nonmoving party.[5] Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[6] A material fact is one upon which the outcome of the litigation depends.[7] Questions of fact may be determined as a matter of law when reasonable minds can reach only one conclusion.[8]
¶ 17 The Department asserts that the trial court made an error of law by failing to grant its motion for summary judgment and dismiss all claims against Williams, Wene, and Jeppesen. It argues that these defendants were entitled to immunity and that RCW 18.130.050 expressly authorized the Board to summarily suspend Jones' licenses because his violations posed a danger to the public. According to the Department, Williams, Wene, and Jeppesen are entitled to immunity because pharmacy regulators must be allowed to act independently and without fearing liability when performing their duty to ensure that Washington pharmacists comply with state and federal health and safety laws.
I. Absolute Immunity
¶ 18 The Department argues that the trial court erred as a matter of law by not conferring absolute immunity on Executive Director Williams and dismissing all claims against him because Jones' claims against him are premised on prosecutorial conduct. The Department asserts that absolute prosecutorial immunity is not limited to prosecuting attorneys but extends to administrative agency officials who initiate disciplinary proceedings. We agree.
¶ 19 Whether a government official is entitled to absolute immunity is a question of law that can be properly decided on summary judgment.[9] In Hannum v. Friedt, we held that the Director of the Department of Licensing (DOL) was entitled to prosecutorial immunity because she performed a prosecutorial function when she charged Hannum and summarily suspended his vehicle dealer license.[10] We also held that a DOL Investigator was entitled to absolute immunity because she acted in a prosecutorial role when she recommended summary suspension of Hannum's dealer license.[11] These rulings reflect the policy that administrative agency officers who initiate administrative adjudications should be shielded by absolute prosecutorial immunity because the discretion they exercise when initiating an adjudicative matter "`might be distorted if their immunity *1226 from damages arising from that decision was less than complete.'"[12]
¶ 20 Jones argues that Hannum does not apply because DOL agents are authorized by statute to summarily suspend driver's licenses and the Executive Director of the Board of Pharmacy is not. He also asserts that Williams' role was investigatory, not prosecutorial, because an Assistant Attorney General prosecuted the case.
¶ 21 Absolute prosecutorial immunity is proper when an official's conduct is the functional equivalent of the acts a prosecutor would perform in the course of deciding whether to prosecute and initiating prosecution. The official need not do everything a prosecutor would do.[13] The Administrative Procedures Act applies to the adjudicative procedures of the Board of Pharmacy.[14] Whether or not an Assistant Attorney General brought the case before the Board, Williams' recommendation to summarily suspend Jones' licenses was no different from the actions of the DOL investigator in Hannum, who was entitled to absolute prosecutorial immunity for substantially the same decisions and actions. Charging decisions and filing a Statement of Charges are traditional prosecutorial functions.[15] When an administrative officer exercises discretion in deciding whether to suspend a license, that officer is also entitled to absolute immunity. Jones' presented no evidence to show that Williams participated in the investigation, directed Wene's and Jeppesen's actions or did anything other than decide that summary suspension was warranted. Accordingly, we hold that the trial court made an error of law by not granting the Department's motion to dismiss Executive Director Williams from the lawsuit based on absolute immunity.
II. Qualified Immunity § 1983 Claims
¶ 22 The Department argues that all three defendants were entitled to qualified immunity, and the trial court should have dismissed them on that basis because Jones failed to show the violation of a clearly established constitutional right. It also contends the trial court should have dismissed this action because RCW 18.130.050(7) expressly authorizes summary suspension, without a pre-deprivation hearing, under emergency circumstances. While it is not entirely clear what constitutional right Jones relies on for his section 1983 claims, his allegations and briefing appear to allege that he was denied procedural due process.
¶ 23 Qualified immunity protects government officials from insubstantial and harassing litigation without foreclosing suits for damages that may be the only avenue for the vindication of constitutional rights.[16] Qualified immunity is a judicially created doctrine that stems from the premise that few people would enter public service if it entailed the risk of personal liability for official decisions.[17] Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."[18] Immunity, whether absolute or qualified, "spare[s] a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit."[19]
¶ 24 Defendants are entitled to summary judgment based on qualified immunity if plaintiffs' complaint fails to state a *1227 claim[20] or, in light of clearly established principles governing their conduct, they objectively could have believed their conduct was lawful,[21] or when there is no genuine issue of material fact about whether they engaged in conduct violating a plaintiff's clearly established constitutional rights.[22] Once the defendant asserts qualified immunity, the plaintiff must establish that the defendant violated a clearly established constitutional right in order to survive summary judgment.[23] Jones claims the individual defendants violated his due process rights when they suspended his licenses. But the suspension was authorized by law, and we conclude that none of the defendants violated Jones' right to due process, and they are thus entitled to qualified immunity.
¶ 25 WAC 246-869-190 authorizes the Board of Pharmacy to inspect Washington pharmacies.[24] When a pharmacy receives an unsatisfactory score, it must raise its score to a satisfactory level score of 90 or better within 14 days.[25] RCW 34.05.479 authorizes agencies to use emergency adjudicative actions when there is an immediate danger to the public health. In July 1999 and again in August 1999, Jones received an unsatisfactory score, even though he had been given an opportunity to correct his violations. Upon reinspection, the investigators found that several of the violations were still not addressed, including DEA records for Schedule II drugs and records of customer requests for non child resistant containers (non-CRCs). The investigators also found prescriptions with incorrect NDA numbers in the customer pickup bins, which Jones admitted had been there since the time of the last inspection.[26] While he claimed in this lawsuit that the inspection reports were in error, his August 1999 declarations admitted these facts were true. RCW 34.05.479 expressly authorizes the agency to use emergency adjudicative actions when there is an immediate danger to the public health. And under RCW 18.130.050(7), WAC 246-869-190(8) and WAC 246-11-300, the Board can take emergency action and summarily suspend a pharmacist's license pending further disciplinary proceedings if, after reviewing the evidence, it determines that only summary action will address an immediate danger to public health, safety, or welfare. Given the serious nature of the violations, the Board had statutory authority to summarily suspend Jones' licenses.
¶ 26 Jones argues that the Board violated his due process rights, apparently because he did not receive a pre-deprivation or expedited hearing.[27] Where an individual *1228 possesses a constitutional property interest, due process requires that he be given notice and a meaningful opportunity to a hearing before he is deprived of that interest.[28] We must balance three factors to determine the nature of the procedural protections required: (1) the gravity of the private interest affected; (2) the risk of erroneous deprivation under the current procedure and the probable value, if any, of additional procedural safeguards; and (3) the interest of the government, including the burdens of additional or substitute procedures.[29] As discussed above, the governmental interest here was important because Jones' violations threatened the health and well-being of his patients. And he received all the process that was due. Jones received notice of the summary suspension and of all later charges and hearings associated with his professional licenses. He was represented by counsel. Twenty-one days after the summary suspension, a three member panel of the Pharmacy Board heard his motion to stay and modify the summary suspension order. Each time Jones and his pharmacy received a failing score, the Board reinspected the pharmacy in accordance with WAC 246-869-190. Finally, when the Board issued the summary suspension, Jones had an opportunity to be heard before the Board at a September 10, 1999 prompt hearing.
¶ 27 Once a summary suspension is filed, under WAC 246-11-330 a pharmacist can respond in several ways:
(1) Request a prompt adjudicative proceeding conducted in accordance with this chapter; or
(2) Waive the prompt adjudicative proceeding and request a regularly scheduled adjudicative proceeding conducted in accordance with this chapter;
(3) Waive the right to an adjudicative proceeding and submit a written statement to be considered prior to the entry of the final order; or
(4) Waive the opportunity to be heard.
¶ 28 By filing his motion to stay and modify the order and failing to request a prompt hearing within 10 days of service, Jones waived his right to a prompt hearing and knew that he was doing so when he filed his motion. Had he sought a prompt hearing, Jones would have had an opportunity to meet with the Board in mid-September and may have avoided the damages he now alleges. Nor did the Department violate his right to due process simply because it opposed his later motion for an expedited hearing. Finally, Jones also waived his opportunity for a more extensive hearing on the merits of his suspended licenses by stipulating to a five year suspension before the scheduled hearing could take place. No further process would have protected Jones' rights, even if he had not waived his right to an early hearing. Jones failed to raise a material issue of fact or to establish that he was entitled to more process than he received. Under the Mathews test, there was no violation of Jones' rights. Wene and Jeppesen were therefore entitled to qualified immunity. The trial court erred in denying the Department's motion to dismiss the claims against them.
III. Evidentiary Rulings
¶ 29 The Department asserts the trial court erred by ruling there were genuine issues of material fact based on Jones' declaration because it contained inadmissible hearsay and contradicted the earlier declarations he submitted to the Board, a quasi-judicial body. It also asserts that the trial court should have applied the doctrine of judicial estoppel to Jones' declaration because it contradicted earlier declarations. Jones asserts that the declarations were admissible because evidence not offered for the truth of the matter asserted is not hearsay under ER 801(c). We disagree with Jones' position.
¶ 30 On summary judgment, the court's function is to determine whether a genuine issue of material fact exists; it is not to resolve an existing factual issue.[30] When *1229 ruling on a summary judgment motion, a court cannot consider inadmissible evidence.[31] Here, the trial court granted the Department's motion to strike the hearsay portions of Jones' declaration submitted in opposition to the Department's motion for summary judgment, considering it only for "background" but "not for the truth of the matter asserted." We hold that the trial court properly granted the motion to strike, but it erred by considering the hearsay portions of Jones' declarations for any purpose. Because we are reversing any of the trial court's rulings that may have been based on inadmissible hearsay, we need not address the matter further.[32]
IV. Exhaustion of Administrative Remedies
¶ 31 The Department next asserts the trial court erred as a matter of law by holding that Jones' state law claims were not precluded by his stipulations. Relying on Laymon v. Dep't of Natural Resources,[33] it also contends these claims should have been dismissed because Jones failed to exhaust his administrative remedies. And because Jones derived a benefit from his agreement to a five year license suspension and the Pharmacy Board relied on the agreement when it signed the order, the Department argues that Jones should not be allowed to take a position inconsistent with the statements he made before the Pharmacy Board.
¶ 32 Jones argues that he was not required to exhaust his administrative remedies because doing so would not have mitigated his damages. He claims the defendants issued false investigation reports against him and his pharmacy, and the Department opposed his effort to effectively use the administrative process to challenge the summary suspension by opposing his motion for an expedited hearing. Because he had lost his pharmacy franchise, commercial lease, and business before the scheduled hearing, Jones contends that the administrative remedies available to him would not have prevented the harm he suffered. He asserts he entered into the Stipulated Order because he could not afford to proceed against the Board. And he argues that he neither admitted to the facts nor waived his right to sue the defendants by agreeing to the Stipulated Order.
¶ 33 It is well settled law that a party aggrieved by governmental action must exhaust available administrative remedies before filing suit unless he can establish that doing so would be futile.[34] When an aggrieved person fails to seek redress using available administrative procedures before filing suit, the trial court should dismiss the claim.[35] In Laymon, we affirmed the trial court's ruling dismissing the plaintiff's claims on summary judgment for failure to exhaust his administrative remedies. Laymon sued the Department of Natural Resources (DNR), the Department of Fish and Wildlife (DFW), and the State for administrative negligence. DNR issued a stop work order for logging on his land based on a report that a bald eagle nest site was located on the property.[36] Ten days after it issued the stop work order, DNR presented Laymon with a draft bald eagle management plan that placed significant restrictions on his planned development.[37] Despite his insistence that there could be no bald eagle on or adjacent to his property, Laymon's financial backers withdrew from the project, and he suffered financial loss. Six months later, DFW determined that the bald eagle nest never existed.[38] Laymon did not pursue any avenue of administrative appeal.
*1230 ¶ 34 Jones argues that Laymon is distinguishable because, even if Jones had pursued administrative remedies, he could not have saved his business. But Jones' arguments are not supported by the record. He waived his right to a prompt hearing when he failed to request one and file a written response to the summary license suspension within the 10 day time limit.[39] Rather than request a prompt adjudicative proceeding, Jones filed a Motion to Modify and Stay the Summary Suspension. Only after this motion was denied did he request an expedited hearing. By that time, he was no longer entitled to a hearing date outside the Pharmacy Board's regular schedule.[40]
¶ 35 Under our holding in Phillips v. King County, plaintiffs must exhaust their administrative remedies when an agency's rules set out a clearly defined process for resolving the aggrieved party's complaint.[41] This doctrine is based on the principle that the judiciary should give proper deference to agency expertise and allow the agency to develop the necessary factual background in order to correct its own errors.[42] Had Jones requested a prompt hearing, he could have immediately challenged the Statement of Charges and the Pharmacy Board could have evaluated the accuracy of the investigators' report. But Jones waived his right to a prompt hearing on September 10, 1999, and was not entitled to an expedited hearing before the next regularly scheduled date. The delay that took place between the date when the prompt hearing could have been held and the date the adjudicative hearing was ultimately scheduled was not caused by the Department or the individual defendants but by Jones' own strategic decisions. We hold that the trial court erred by finding that his state law claims could proceed despite his failure to exhaust his administrative remedies.[43]

CONCLUSION
¶ 36 We reverse and remand for entry of an order granting the Department's motion dismissing Jones' suit.
WE CONCUR: ELLINGTON and BAKER, JJ.
NOTES
[1] Findings 4-6 refer to drugs classified as narcotics and other controlled substances under state and federal law.
[2] Jones alleges that by November, he had lost his entire business, his franchise, and his commercial lease.
[3] On appeal, Jones argues he signed the stipulated order because he no longer had the financial wherewithal to pay for an attorney and challenge the Board of Pharmacy and could not afford risking his professional license.
[4] Jones agreed to dismiss his claim for injunctive relief and did not oppose the Department's motion to dismiss his claims for negligent investigation.
[5] Suquamish Indian Tribe v. Kitsap County, 92 Wash.App. 816, 827, 965 P.2d 636 (1998) (citing Mountain Park Homeowners Ass'n v. Tydings, 125 Wash.2d 337, 341, 883 P.2d 1383 (1994)).
[6] CR 56(c); City of Sequim v. Malkasian, 157 Wash.2d 251, 261, 138 P.3d 943 (2006).
[7] Greater Harbor 2000 v. City of Seattle, 132 Wash.2d 267, 279, 937 P.2d 1082 (1997).
[8] Hartley v. State, 103 Wash.2d 768, 775, 698 P.2d 77 (1985) (citing La Plante v. State, 85 Wash.2d 154, 531 P.2d 299 (1975); Balise v. Underwood, 62 Wash.2d 195, 381 P.2d 966 (1963)).
[9] Hannum v. Friedt, 88 Wash.App. 881, 887, 947 P.2d 760 (1997).
[10] 88 Wash.App. 881, 889, 947 P.2d 760 (1997).
[11] Id.
[12] Id. at 888-89, 947 P.2d 760 (quoting Butz v. Economou, 438 U.S. 478, 515, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)).
[13] See id.
[14] RCW 18.13.100; WAC 246-869-001.
[15] Kalina v. Fletcher, 522 U.S. 118, 127, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997).
[16] Robinson v. City of Seattle, 119 Wash.2d 34, 62, 830 P.2d 318, cert. denied, 506 U.S. 1028, 113 S.Ct. 676 (1992).
[17] Malley v. Briggs, 475 U.S. 335, 339, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).
[18] Hunter v. Bryant, 502 U.S. 224, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) (quoting Malley, 475 U.S. at 343, 106 S.Ct. 1092).
[19] Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991).
[20] Id. at 233, 111 S.Ct. 1789.
[21] Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).
[22] Burgess v. Pierce County, 918 F.2d 104, 106 n. 3 (9th Cir.1990).
[23] Id.
[24] During inspections, pharmacies are scored on a 0 to 100 scale and classified into three categories: "Class A" for scores from 90-100; "Conditional" for scores from 80-89; and "Unsatisfactory" for scores below 80. WAC 246-869-190(3)(a)(b)(c).
[25] WAC 246-869-190(5).
[26] To support the Pharmacy Board's finding of an emergency necessitating summary suspension of a pharmacy license, the Department cites to numerous cases involving acts similar to Jones' admissions. These examples include prosecution under the Controlled Substances Act for the type of insufficient Schedule II records Jones acknowledged, see, e.g., United States v. Poulin, 926 F.Supp. 246 (D.Mass.1996), and cases demonstrating real harm to individual patients when a pharmacist failed to keep proper records. See, e.g., Wahba v. H & N Prescription Ctr., Inc., 539 F.Supp. 352 (E.D.N.Y.1982) (two year old died after ingesting 20 pills that were dispensed to mother by pharmacist in non child resistant container); Baker v. Arbor Drugs, 215 Mich.App. 198, 544 N.W.2d 727 (1996), appeal denied, 454 Mich. 853, 558 N.W.2d 725 (1997) (pharmacy patient suffered stroke after pharmacist filled prescriptions for two incompatible drugs because pharmacist failed to properly utilize computer system that would have warned of the adverse drug reaction).
[27] Jones also asserts that the defendants participated in a conspiracy against him to destroy his business and filed a summary suspension based on false accusations. He contends Wene and Jeppesen were highly unprofessional and instituted proceedings against him based on an arbitrary scoring system. Jones did not present any admissible evidence to support these allegations below. Accordingly, we do not address any allegations that the defendants violated his right to substantive due process.
[28] Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
[29] Mathews, 424 U.S. at 335, 96 S.Ct. 893.
[30] Thoma v. C.J. Montag & Sons, Inc., 54 Wash.2d 20, 337 P.2d 1052 (1959).
[31] CR 56(e); King County Fire Prot. Dist. No. 16 v. Hous. Auth. of King County, 123 Wash.2d 819, 826, 872 P.2d 516 (1994).
[32] We decline to address the Department's arguments concerning any allegedly contradictory statements within Jones' declarations because it did not raise this objection below.
[33] 99 Wash.App. 518, 994 P.2d 232 (2000).
[34] Laymon, 99 Wash.App. at 525, 994 P.2d 232 (citing CLEAN v. City of Spokane, 133 Wash.2d 455, 465, 947 P.2d 1169 (1997), cert. denied, 525 U.S. 812, 119 S.Ct. 45, 142 L.Ed.2d 35 (1998)).
[35] Id.
[36] Id. at 522, 994 P.2d 232.
[37] Id.
[38] Id. at 523, 994 P.2d 232.
[39] WAC 26-11-340(3).
[40] WAC 246-11-340(2) provides: "Any respondent affected by a summary action may request [a] prompt adjudicative proceeding, may elect a regularly scheduled adjudicative proceeding instead of a prompt adjudicative proceeding, or may waive the opportunity for adjudicative proceeding in accord with WAC 246-11-270."
[41] 87 Wash.App. 468, 479, 943 P.2d 306 (1997), aff'd, 136 Wash.2d 946, 968 P.2d 871 (1998).
[42] Id. at 479-80, 943 P.2d 306.
[43] As part of his respondent's brief, Jones moved to strike the Department's reference to all out-of-state cases on the ground that reliance on these cases is not probative of any issue in this case. Jones does not cite any authority to support his motion. The Department's citations are relevant, and we deny the motion.