230 P.3d 599 (2010)
Nicholas ENSLEY, Appellant,
v.
Stephan MOLLMANN and "Jane Doe" Mollmann, husband and wife, and the marital community composed thereof, dba the Twilight Exit; Broadway Boy Ventures, LLC, a Washington limited liability company, dba Impromptu Art & Wine Bar; Defendants,
Timothy Lyle Johnson and "Jane Doe" Johnson, husband and wife, and the marital community composed thereof; Respondents,
Lyle Sylvester Johnson and "Jane Doe" Johnson, husband and wife, and the marital community composed thereof, dba Red Onion Tavern; Rebecca Humphries and "John Doe" Humphries, wife and husband, and the marital community composed thereof; jointly and severally, Defendants.
No. 63407-1-I.
Court of Appeals of Washington, Division 1.
March 1, 2010.
Publication Ordered May 3, 2010.
*601 Aaron Lewis Adee, The Adee Law Firm, PLLC, Seattle, WA, for Appellant.
Jennifer L. Brown, Maggie Eileen Diefenbach, Melissa O'Loughlin White, Cozen O'Connor, Seattle, WA, for Respondents.
LAU, J.
¶ 1 After a night of drinking, Rebecca Humphries crashed her car into two parked cars resulting in serious injuries to Nicolas Ensley. Ensley sued Humphries, Red Onion Tavern, and two other bars that served her alcohol, alleging negligent overservice of Humphries while apparently under the influence of alcohol. Ensley appeals trial court orders (1) granting Red Onion Tavern's summary judgment dismissal motion, (2) striking appearance of intoxication evidence as hearsay, (3) affirming dismissal of all claims against Red Onion Tavern, and (4) denying motions to amend complaint, to vacate judgments, and shorten time. Because Ensley presented no admissible evidence that Red Onion Tavern served alcohol to Humphries while apparently intoxicated, we conclude the court properly granted summary judgment dismissal. And because Ensley's remaining contentions are without merit, we affirm.

FACTS AND PROCEDURAL HISTORY
¶ 2 Early on March 31, 2005, Nicholas Ensley suffered serious injuries when Rebecca Humphries crashed her car into two parked cars after a night of drinking. On the night of March 30, Ensley, Humphries, and Daniel Ahern started drinking at the Impromptu bar, moved to the Red Onion Tavern, and ended their night at Twilight Exit. Ensley sued Humphries and the bars alleging several negligence theories, including negligent overservice.[1] Red Onion moved for summary judgment based on the undisputed evidence that Humphries was at the Red Onion for less than 30 minutes, she consumed less than one drink while there, Red Onion patrons who saw her there observed no sign of apparent intoxication, and she consumed several additional drinks after leaving the Red Onion but before the crash.
¶ 3 Ensley opposed summary judgment, relying principally on the deposition of Ahern, who spoke with Red Onion bartender, Clifford Pitcher, "a couple days after the accident."[2] Ahern testified that Pitcher told him Humphries had glassy eyes and he should not have served her.
[Counsel] Since the crash who have you talked to about the facts of that night?
[Ahern] I've discussed it with Chris, Stacy, Cliff the owner, and Cliff the bartender at the Red Onion.
Q. What did you and Cliff at the Red Onion discuss?
A. I was just askingI just kind of wanted to get a sense of what he saw from thatfrom that night, and just if *602 how everybody looked. And I just kind of wanted to getjust to get a sense of that.
Q. When did this conversation take place?
A. A couple days after the accident.
Q. At the Red Onion?
A. Yes.
Q. Were you drinking at the time?
A. No. I just stopped in after work and was on my way home.
Q. What did Cliff the bartender at Red Onion tell you?
A. He said Rebecca looked a little glassyeyed, and I don't remember what he said about Nick.
Q. From yourwell, do you remember anything else about that conversation?
A. No.
Q. Did he say how you looked?
A. He said I looked a little glassy, but not enough that he wouldn't serve me a beer.
Q. Did he say that Rebecca looked in a condition where he wouldn't serve her a beer?
A. He said she looked a little more glassier than us, but . . . (Pause.)
Q. So
A. Yes.
Q. did he say that Rebecca was in a condition where he would not have served her a beer?
A. Yes. I believe so, yes.
¶ 4 In response, Red Onion moved to shorten time and to strike this testimony as inadmissible hearsay.[3] Ensley opposed the motions. He argued that as Red Onion's speaking agent, Pitcher's testimony was admissible against Red Onion as a statement of a party opponent under ER 801(d)(2). The court granted the motions to shorten time, strike declaration excerpts based on Ahern's hearsay testimony, and summary judgment dismissing Ensley's claims against Red Onion. Ensley then moved for reconsideration, arguing for the first time that Ahern's statements were either nonhearsay because they were not offered to prove the truth of the matter asserted or admissible under ER 803(a)(3)'s state of mind hearsay exception. The court denied reconsideration on April 17, 2007. Ensley then filed a motion for discretionary review on April 27, 2007, which we denied on June 25, 2007.
¶ 5 On November 21, 2007, Ensley moved to amend his complaint to add claims against Pitcher. He filed this motion just weeks before the discovery cutoff and two months before the scheduled trial, despite knowledge for almost ten months about Pitcher's alleged inculpatory statements to Ahern. The court denied the motion to amend, citing unfairness to the defendants by delaying the trial beyond the scheduled date.[4]
¶ 6 Eight months later, Ensley filed a CR 60(b) motion to vacate the orders granting Red Onion's motion to strike, granting summary judgment dismissal, and denying motion to amend his complaint. The court denied the motion to vacate and Ensley's subsequent motion for reconsideration. And on September 11, 2008, the court granted Red Onion's motion for CR 11 sanctions against Ensley's counsel.
¶ 7 On December 1, 2008, Red Onion filed a motion to affirm that the summary judgment order dismissed all claims by Ensley against Red Onion Tavern.[5] The court granted this motion on December 10, 2008.[6]

ANALYSIS

Standard of Review
¶ 8 We review most of Ensley's assignments of error under an abuse of discretion *603 standard. A court abuses its discretion when its decision is based on untenable grounds or reasoning. Luckett v. Boeing Co., 98 Wash. App. 307, 309, 989 P.2d 1144 (1999). When reviewing an order granting summary judgment, we engage in the same inquiry as the trial court, viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party. Jones v. Allstate Ins. Co., 146 Wash.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); Jones, 146 Wash.2d at 300-01, 45 P.3d 1068.

Motion to Strike[7]
¶ 9 Ensley first argues that the court erred by striking declaration excerpts opposing summary judgment because it found the evidence was inadmissible hearsay. The stricken excerpts included Ahern's above-quoted deposition testimony in which he claimed that Pitcher told him Humphries looked glassy eyed and he should not have served her a beer. The court also struck Ensley's expert witness testimony that relied on Ahern's deposition testimony.[8] Red Onion responds that the court properly excluded these statements because Pitcher was not Red Onion's "speaking agent." This court reviews evidentiary rulings made in connection with a summary judgment ruling de novo. Ross v. Bennett, 148 Wash.App. 40, 45, 203 P.3d 383 (2008); Folsom v. Burger King, 135 Wash.2d 658, 663, 958 P.2d 301 (1998).
¶ 10 "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). However, under ER 801(d)(2) a statement of admission by party-opponent is nonhearsay,
[If] offered against a party and is . . . (iii) a statement by a person authorized by the party to make a statement concerning the subject, or (iv) a statement by the party's agent or servant acting within the scope of the authority to make the statement for the party . . .
But "[i]n order for a statement to satisfy these requirements, the declarant must be authorized to make the particular statement at issue, or statements concerning the subject matter, on behalf of the party." Lockwood v. AC & S, Inc., 109 Wash.2d 235, 262, 744 P.2d 605 (1987).
¶ 11 The Supreme Court addressed a nearly identical issue in Barrie v. Hosts of Am., Inc., 94 Wash.2d 640, 618 P.2d 96 (1980). There, a bar patron crashed his car and died after drinking at a hotel bar. Barrie, 94 *604 Wash.2d at 641, 618 P.2d 96. The decedent's estate sued Hosts of America, alleging negligence for serving Barrie while he was obviously intoxicated. Barrie, 94 Wash.2d at 641, 618 P.2d 96. The estate argued that a bar manager's statement that Barrie was "smashed" was admissible under ER 801(d)(2)(iii) because she was the hotel's authorized speaking agent. Barrie, 94 Wash.2d at 643-44, 618 P.2d 96. The court disagreed and held that because "[n]o evidence of such authorization [was] present in the . . . record" the statement did not satisfy ER 801(d)(2)(iii). Barrie, 94 Wash.2d at 645, 618 P.2d 96.
¶ 12 The circumstance here is analogous no evidence appears in the record that Pitcher was expressly authorized to speak on behalf of Red Onion. And a bartender is not necessarily authorized to admit key facts related to liability merely because he is the only server on duty and thus in "the position of authority over the service." Br. of Appellant at 32; see Barrie 94 Wash.2d at 644-45, 618 P.2d 96. Absent evidence of express speaking authority, Pitcher is not Red Onion's speaking agent and his statement was hearsay.
¶ 13 Ensley relies on Lockwood, 109 Wash.2d 235, 744 P.2d 605. Because there was no evidence of express authority, the court analyzed documents written by an asbestos manufacturer's director of environment, corporate officials and corporate medical director under an "overall nature of [the declarant's] authority to act for the party" standard. Lockwood, 109 Wash.2d at 262, 744 P.2d 605. Since the declarants had "authority to act as health officials for Raymark. . . it [was] reasonable to infer that they were authorized to make statements about the subject of asbestos health issues on Raymark's behalf." Lockwood, 109 Wash.2d at 262, 744 P.2d 605. Lockwood is distinguishable. There, speaking authority was inferred from the overall nature of the declarants' positions in the corporation as health directors and officials. Here, no such inference is reasonable based on the overall limited nature of Pitcher's work as a bartender. "[T]he overall nature of his authority to act for the party" was thus extremely limited. Lockwood, 109 Wash.2d at 262, 744 P.2d 605. We conclude that Pitcher lacked authority to admit liability or speak publicly on Red Onion's behalf about the cause of the car crash.[9]
¶ 14 Ensley next argues that since the statements were not offered for their truth, they are nonhearsay statements. In the alternative, he maintains the statements fall under the state of mind exception to the hearsay bar.[10] Specifically, Ensley argues that he offered the statements for the limited purpose of showing Pitcher's belief that Humphries appeared intoxicated, not to show that she actually appeared intoxicated. But Ensley fails to demonstrate the relevance of Pitcher's belief to any issues in this case. "Evidence which is not relevant is not admissible." ER 402. But even assuming Pitcher's belief is relevant to an issue in the case, his statements about Humphries's appearance are not substantive evidence when offered to show Pitcher's belief.
¶ 15 The "to prove the truth of the matter asserted" rule is
sometimes phrased in terms of relevance. Thus, an out of court statement is hearsay if it is the content of the statement that is relevant to the case at hand. In this situation, the relevance of the statement hinges on the credibility of the out-of-court declarant (the statement is relevant only if true), thus triggering the restrictions of the hearsay rule.
KARL B. TEGLAND, COURTROOM HANDBOOK ON WASHINGTON EVIDENCE 391 (2009-2010 ed.). Here, Pitcher's statements are hearsay because it is the content of his statements that are relevant in this case. And their relevance *605 rests on Pitcher's credibility.[11]See State v. Stenson, 132 Wash.2d 668, 940 P.2d 1239 (1997) (statement asking when defendant intended to arrive was offered for the truth of the matter and not for intent, because the statements were relevant to intent only if true).
¶ 16 And Ensley's contention that Pitcher's statements reveal his "state of mind" under ER 803(a)(3) also fails. That rule provides, "A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition . . ., but not including a statement of memory or belief to prove the fact remembered or believed . . ." (Emphasis added.) Pitcher's statements a couple of days after the collision were statements of memory or belief. Accordingly, we conclude that Pitcher's statements to Ahern about Humphries's appearance of intoxication are inadmissible hearsay and may not be considered on summary judgment.[12]See Jones v. State, 140 Wash.App. 476, 166 P.3d 1219 (2007) (when ruling on a summary judgment motion, a court cannot consider inadmissible evidence), review granted, 164 Wash.2d 1019, 195 P.3d 89 (2008).

Summary Judgment[13]
¶ 17 Ensley next argues that the court erred in granting summary judgment dismissal because Humphries's alcohol consumption before arriving at the Red Onion and her appearance after leaving created an inference that she was apparently intoxicated when served at the Red Onion. Red Onion responds that Humphries's actions before arriving at and her appearance after leaving the Red Onion are insufficient to establish a material issue of fact. We review summary judgment de novo. Jones, 146 Wash.2d at 300, 45 P.3d 1068.
¶ 18 RCW 66.44.200(1) prohibits the sale of alcohol to anyone "apparently under the influence of liquor." That language also establishes the standard of civil liability for a commercial host in an overservice case. Barrett v. Lucky Seven Saloon, Inc., 152 Wash.2d 259, 273-74, 96 P.3d 386 (2004). "Apparently" means "`readily perceptible to the senses' and `capable of being readily perceived by the sensibilities or understanding as certainly existent or present.'" Barrett, 152 Wash.2d at 268, 96 P.3d 386 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 103, 1559 (2002)). The "apparently under the influence standard" replaced the common law "obviously intoxicated" standard. Faust v. Albertson, 166 Wash.2d 653, 659, 211 P.3d 400 (2009). While "the two standards differ meaningfully," cases interpreting a plaintiff's evidentiary burden to defeat summary judgment under the common law standard remain good law. Faust, 166 Wash.2d at 658, 211 P.3d 400.
¶ 19 To survive summary judgment in an overservice case, a plaintiff must demonstrate "that the tortfeasor was `apparently under the influence' by direct, observational evidence at the time of the alleged overservice *606 or by reasonable inference deduced from observation shortly thereafter." Faust, 166 Wash.2d at 659, 211 P.3d 400 (quoting RCW 66.44.200(1)). Evidence of the amount of alcohol consumed is insufficient to establish that the person was apparently under the influence at the time of service. See Christen v. Lee, 113 Wash.2d 479, 487, 780 P.2d 1307 (1989) (applying common law obviously intoxicated standard). Likewise, a person's appearance a substantial time after the service is insufficient evidence of apparent intoxication to defeat summary judgment. See Christen, 113 Wash.2d at 488-89, 780 P.2d 1307.
¶ 20 Here, no admissible evidence appears in the record that Humphries was apparently intoxicated at the time Pitcher served her. The undisputed evidence shows that when Ahern talked to Humphries at the Red Onion, she was not slurring her speech or speaking loudly and he did not think she was drunk. Pitcher testified that he looked Humphries in the eyes and the face before serving her and she did not have glassy eyes, flushed cheeks, or exhibit trouble walking, drinking, or talking. He further testified that he saw no indication that she had been drinking before arriving at the Red Onion. Finally, Ensley testified in his deposition that while at the Red Onion he did not observe Humphries speaking loudly, slurring her speech, or stumbling because he had his back to Humphries.
¶ 21 Ensley relies on Dickinson v. Edwards, 105 Wash.2d 457, 716 P.2d 814 (1986) to argue that other evidence, including the 15 plus drinks Humphries consumed before arriving at the Red Onion and her conduct after leaving the Red Onion, create an inference that she was apparently intoxicated when she was at the Red Onion. The court held in Dickinson that 15 to 20 drinks, plus the police officer's observation that the tortfeasor was falling down drunk just ten minutes after leaving a banquet, was adequate to raise a fact question of obvious intoxication.
¶ 22 While Ensley acknowledges the holding in Christen that evidence of the amount of alcohol consumed is insufficient to establish that a person was furnished intoxicating liquor while obviously or apparently intoxicated, he reads that case to leave intact the earlier holding in Dickinson. But we conclude that Dickinson is limited to its unique facts by Christen.[14] And the unique facts present in Dickinson are not the equivalent of Humphries's conduct.
¶ 23 Here, the only evidence in the record that Humphries appeared intoxicated after leaving the Red Onion is that she fell at Twilight and crashed her car after leaving Twilight.[15] But both the fall and the crash occurred after Humphries consumed between one and four hard-alcohol drinks.[16] Therefore, Humphries's conduct before arriving at Red Onion and conduct after leaving are insufficient to raise material issues of fact. See Dickinson, 105 Wash.2d at 464, 716 P.2d 814 (finding that if tortfeasor drinks after defendant's service, "subsequent observations may not raise an inference of obvious intoxication upon which to base a material issue of fact"). We conclude the court properly granted summary judgment dismissal.

*607 Summary Judgment Affirmation

¶ 24 Ensley next contends that the court erred in granting Red Onions motion to affirm the summary judgment dismissal of all his claims. According to Ensley, Red Onion moved for summary judgment dismissal of his overservice claim but not his negligent hiring and supervision claims. Ensley therefore argues that these claims remain pending. We disagree.
¶ 25 Our review of the undisputed record shows that on March 9, 2007, Red Onion moved for summary judgment requesting the court to "dismiss Plaintiffs claims against Red Onion with prejudice . . ." (Emphasis added.) And the order granting summary judgment states, "Plaintiff Nicholas Ensley's claims against Defendant . . . Red Onion are hereby dismissed with prejudice." Importantly, Ensley's counsel did not object to or request to modify the summary judgment order to preserve what he now argues are his remaining claims. Both counsel for Ensley and Red Onion signed the summary judgment order, which was presented to and signed by the court without modification to the dismissal of "claims" language. And Ensley's April 9, 2007 motion for reconsideration did not include a contention that the summary judgment order improperly dismissed his remaining claims. Finally, in Ensley's motion for discretionary review to this court, he wrote, "The trial court's decisions completely disposed of all issues against Red Onion." Given this record, the court did not err in affirming the dismissal of all claims.

Motion to Amend
¶ 26 Ensley next contends that the court erred by denying his motion to amend his complaint to add Pitcher as a defendant. Leave to amend pleadings is freely given by a trial court when justice so requires. CR 15(a). "The disposition of motions to amend the pleadings is discretionary with the trial court, and its refusal to permit such an amendment will not be overturned except for manifest abuse of discretion." Lincoln v. Transamerica Inv. Corp., 89 Wash.2d 571, 577, 573 P.2d 1316 (1978). But "[w]hen a motion to amend is made after the adverse granting of summary judgment, the normal course of proceedings is disrupted and the trial court should consider whether the motion could have been timely made earlier in the litigation." Doyle v. Planned Parenthood of Seattle-King County, Inc., 31 Wash. App. 126, 130-31, 639 P.2d 240 (1982).
¶ 27 Here, it is undisputed that Ensley filed his motion to amend over two years after his original complaint, almost ten months after deposing Ahern, over seven months after summary judgment, two months before the scheduled trial date, and two weeks before the discovery cut off. On this record, we conclude that the court properly denied Ensley's motion to amend his complaint.[17]

Sanctions
¶ 28 Finally, Ensley challenges the award of sanctions against his attorney in his opening brief but withdraws that assignment of error in his reply brief.
¶ 29 Red Onion, however, asks us to award sanctions against Ensley or his counsel, Aaron Adee, "for filing a frivolous appeal of the (1) order denying CR 60(b) motion; and (2) order granting sanctions." Respondent's Br. at 45. Under RAP 18.9(a),[18] we may order a party or counsel who files a frivolous appeal "to pay terms or compensatory damages to any other party who has been harmed by the delay or the failure to comply or to pay sanctions to the court." "`An appeal is frivolous if, considering the entire record, the court is convinced that the appeal presents no debatable issues upon which reasonable minds might differ and that it is so devoid of merit that there is no possibility of reversal.'" Kinney v. Cook, *608 150 Wash.App. 187, 195, 208 P.3d 1 (2009) (quoting Lutz Tile, Inc. v. Krech, 136 Wash. App. 899, 906, 151 P.3d 219 (2007)). Further, we resolve all doubts as to whether an appeal is frivolous in favor of the appellant. Kinney, 150 Wash.App. at 195, 208 P.3d 1.
¶ 30 Considering the entire record, Ensley's appeal is not frivolous. Ensley cites applicable case law and presents several issues that are at least debatable. "An appeal that is affirmed merely because the arguments are rejected is not frivolous." Halvorsen v. Ferguson, 46 Wash.App. 708, 723, 735 P.2d 675 (1986). While Red Onion argues that Ensley's appeal of the court's CR 60 and CR 11 orders is frivolous, it cites no authority approving sanctions where only some assignments of error are argued to be frivolous. In light of the entire record, we deny Red Onion's appellate sanctions request.
¶ 31 In sum, because Ensley presented no admissible evidence that raises a material fact issue on an element central to his overservice claimHumphries's appearance of intoxicationthe court properly granted Red Onion's summary judgment dismissal. And based on the foregoing reasons, Ensley's remaining challenges fail. We affirm.
WE CONCUR: BECKER and GROSSE, JJ.
NOTES
[1] Ensley also asserted negligent hiring and supervision theories against the bars.
[2] Ahern knew Pitcher because Ahern also worked as a bar tender in the neighborhood where Red Onion was located.
[3] Specifically, Red Onion moved to strike the above-quoted testimony and portions of expert testimony that relied on it.
[4] Ensley then filed a new lawsuit against Pitcher, claiming negligent overservice. But on appeal, we held that Ensley's claim against Pitcher was barred by res judicata. Ensley v. Pitcher, 152 Wash.App. 891, 222 P.3d 99 (2009).
[5] Red Onion filed this motion after Ensley claimed in a motion to stay hearing below that claims remained pending against Red Onion despite the order granting Red Onion's summary judgment motion.
[6] On March 31, 2009, Ensley voluntarily dismissed Humphries, the sole remaining defendant.
[7] While Red Onion's motion to strike declarations sufficiently preserves the evidentiary objection under these circumstances, we recently noted in Cameron v. Murray, 151 Wash.App. 646, 658, 214 P.3d 150 (2009),

"The trial court granted the defendants' motion to strike these materials from the record. Cameron assigns error to this ruling. Her objection is well taken. To begin with, materials submitted to the trial court in connection with a motion for summary judgment cannot actually be stricken from consideration as is true of evidence that is removed from consideration by a jury; they remain in the record to be considered on appeal. Thus, it is misleading to denominate as a "motion to strike" what is actually an objection to the admissibility of evidence that could have been preserved in a reply brief rather than by a separate motion."
[8] The stricken portion of Dr. Michael Hlastala's declaration states,

"13. While at Red Onion, Rebecca Humphries exhibited signs of intoxication. A few days after the crash, the bartender confessed to Daniel Ahern that Rebecca Humphries's eyes were glassy and that he should not have served her alcohol. Glassy eyes on a drinker is a recognized sign of intoxication. A statement by the bartender that he should not have served Rebecca Humphries clearly shows that he saw signs of intoxication and appreciated their significance."
And the stricken portion of Dr. Denny Rutherford's declaration states,
"20. Cliff Pitcher did look at the eyes of Rebecca Humphries. A few days after the crash, Cliff Pitcher confessed to Daniel Ahern that Rebecca Humphries's eyes were "glassy" and that he should not have served her any alcohol. Thus, Cliff Pitcher recognized a classic sign that Rebecca Humphries was under the influence of alcohol. Given that information, a bartender following the industry standard for the safe service of alcohol would have not served Rebecca Humphries or taken her drink away, and then made arrangements for her to get home safely. Nevertheless, the bartender at Red Onion allowed Rebecca Humphries to continue to drink and then allowed her [to] get in her car and drive to Twilight."
[9] Ensley's supplemental authority does not alter this conclusion.
[10] Ensley raised both of these arguments for the first time in his motion for reconsideration. But "CR 59 does not permit a plaintiff to propose new theories of the case that could have been raised before entry of an adverse decision." Wilcox v. Lexington Eye Inst., 130 Wash.App. 234, 241, 122 P.3d 729 (2005). Nevertheless, because the trial court addressedand rejectedEnsley's arguments, we address their merits.
[11] Ensley cites State v. Collins, 76 Wash.App. 496, 886 P.2d 243 (1995) in support of his argument that the statement was not offered to prove the truth of the matter. But Collins turned not on the purpose for which the statements were offered, but rather on whether the statements contained an assertion.
[12] Given our resolution of the evidentiary issues, it is unnecessary to address Ensley's challenge to the order denying his CR 60(b) motion to vacate order striking declarations. We agree, however, with Red Onion's contention that the trial court properly exercised its discretion by denying the CR 60(b) motion because it was both legally and factually deficient.

We also note that while Ensley assigns error to the trial court's orders denying his motions to vacate orders granting summary judgment and denying his motion to amend, his entire argument is devoted to the motion to strike issue. Accordingly, we do not address his other contentions. See Watson v. Maier, 64 Wash.App. 889, 899, 827 P.2d 311 (1992) ("Assignments of error lacking argument or citation to authority will not be considered by the courts of appeals."); Conway v. Washington State Dep't of Soc. & Health Servs., 131 Wash.App. 406, 421 n. 16, 120 P.3d 130 (2005) ("Reviewing courts are not required to address issues raised in passing or unsupported by authority or persuasive argument.").
[13] Ensley also assigns error to the order granting Red Onion's motion to shorten time in order to consider its motion to strike declarations under King County Local Rule 7(b)(10)(a). Because the record reveals no prejudice that deprived Ensley of adequate time to prepare or opportunity to provide argument and case authority, the trial court properly granted the motion to shorten time.
[14] See Christen, 113 Wash.2d at 490-91, 780 P.2d 1307 ("It is true that in Dickinson a plurality of this court held that an admission by the person served that he had consumed between 15 and 20 drinks at the establishment therein was sufficient to raise a question of fact on the issue of obvious intoxication. As we pointed out in our unanimous decision in Purchase [v. Meyer, 108 Wash.2d 220, 737 P.2d 661 (1987)], however, Dickinson was `factually unique.' And as we also explained in Purchase, a police officer in Dickinson had observed the person served to be in a `falling down drunk condition' just 10 minutes after that person had left the place where the intoxicating liquor was furnished. No equivalent showing has been made in the case against the China Doll."). (Footnotes omitted.)
[15] Ensley cites to the declaration of Dr. Michael Hlastala, his expert witness, as evidence that Humphries was apparently intoxicated at Twilight. Hlastala's declaration is also based on evidence that Humphries fell down after consuming three drinks.
[16] Humphries testified that she ordered and might have finished one Jack Daniels and coke before the fall and had one more Jack Daniels and coke before leaving Twilight. Ensley testified that Humphries had two shots of ouzo on arrival at Twilight and at least another drink before leaving. Hlastala stated in his declaration that Humphries consumed three drinks "on arrival" at Twilight and had a total of four drinks there.
[17] Ensley asserts that the fact that the trial court later continued the case demonstrates that delay was an insufficient basis on which to deny his motion. However, we review the trial court's decision based on the record before it at the time of the motion. There is no way the trial court could have predicted that it would later continue the trial.
[18] Red Onion asks for sanctions under CR 11 but acknowledges that RAP 18.9(a) is the appropriate appellate rule governing sanctions.