FILED
COURT OF APPEALS
DIVISION II

2015 MAR 24 AM 8: 32

STATE OF WASHINGTON

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| GENE CAMARATA, | No. 45020-8-II |
| Appellant, | |
| v. | |
| KITTITAS COUNTY, KITTITAS COUNTY AUDITOR, KITTITAS COUNTY AUDITOR, JERRY V. PETTIT, KITTITAS COUNTY PROSECUTOR GREGORY L. ZEMPEL, DARREN M. HIGASHIYAMA, | PUBLISHED OPINION |
| Respondents. | |

LEE, J. — Gene Camarata appeals the Kittitas County Auditor's ("Auditor") decision cancelling his voter registration in Kittitas County. The Auditor cancelled Camarata's voter registration after a challenge was filed proving the address at which Camarata registered to vote was a parking lot. Camarata argues that (1) the Auditor's decision is invalid because Camarata did not receive proper notice, (2) the Auditor did not comply with the requirement to post the voter registration challenge on the Auditor's website, (3) the Auditor's decision is legally incorrect, (4) the Auditor's decision is not supported by substantial evidence, and (5) the Auditor violated the appearance of fairness. We hold that the Auditor complied with the statutory requirements for notice and posting, the Auditor properly determined that the law does not permit a homeless person to register at an address at which that person does not currently reside, the Auditor's decision was

supported by substantial evidence, and the Auditor did not violate the appearance of fairness. Accordingly, we affirm.

FACTS

On May 17, 2012, Camarata registered to vote in Kittitas County. CP 50-51; LF 52-53. Camarata identified "1001 E. 8th Ave., (#4), ELLENSBURG, WA 98926" as his residential address. Clerk's Papers (CP) at 51. He identified "General Delivery[,] Ellensburg, WA 98926" as his mailing address. CP at 51.

On June 5, after the Kittitas County prosecutor raised a concern about Camarata's voter registration, Kittitas County Sheriff's Detective Darren Higashiyama began investigating Camarata for voter registration fraud. Higashiyama determined that 1001 E. 8th Ave. was an empty lot owned by Kittitas County Fairgrounds. The apartment that was originally at the 1001 E. 8th Ave. address was completely demolished in 2008. Higashiyama drove to 1001 E. 8th Ave. and took photographs of the property. There were no identifiable structures on the property. Higashiyama also determined that the Kittitas County Fairgrounds does not rent or lease their property and that no one was living or residing on the Kittitas County Fairgrounds property. On June 12, Higashiyama received a phone call from Camarata, and Camarata told Higashiyama that he was sleeping on buses in Yakima.

Higashiyama sent a letter to both addresses Camarata listed on his voter registration form, asking Camarata to verify the address in his voter registration. He also performed searches for Camarata's address in online directories and the phone book. Higashiyama searched Kittitas County property records and determined that Camarata did not own any property in Kittitas

2

County. Higashiyama also did a search of the statewide voter registration records, which showed Camarata was not registered to vote in any other county.

On June 22, Higashiyama filed a challenge to Camarata's voter registration. The voter registration challenge alleged that Camarata did not reside at his registered address. Higashiyama alleged that Camarata's actual residence was "Transient, Yakima County." CP at 31. Higashiyama also attested that he personally took the following steps: (1) sent a letter to Camarata's known addresses to verify his address in the voter registration, (2) searched local telephone directories, (3) searched county property records, (4) searched the statewide voter registration database, and (5) visited the voter's residential address. Higashiyama attached a copy of his investigation report signed under the penalty of perjury. He included a copy of the letter he mailed to Camarata, and he included copies of the internet searches, relevant phone book pages, county property records, and the results of the statewide voter registration database search.

Sue Higginbotham, administrative assistant and election supervisor for Kittitas County, posted the entire voter registration challenge form on the Auditor's website. Based on advice from the Washington Secretary of State, Higginbotham did not post all the materials attached to the voter registration challenge form. A hearing on the voter registration challenge was scheduled for July 13, 2012. On June 26, the Auditor mailed the voter registration challenge and notice of the hearing to Camarata's mailing address: General Delivery, Ellensburg, WA 98926.

The hearing was held on July 13. Neither Camarata nor Higashiyama was present at the hearing. The documents attached to Higashiyama's voter registration challenge were admitted into evidence. The administrative record also included photocopies of four envelopes that were sent to Camarata at his mailing address: General Delivery, Ellensburg, WA 98926. All four

envelopes were returned unclaimed. The first was what a letter sized envelope that was sent via certified mail on June 28, 2012. There was $0.45 postage and fees for certified mail and return receipt for a total of $5.75. There were also three other envelopes from the Auditor all of which were letter sized envelopes with $0.45 postage.

Based on the July 13 hearing, the Auditor issued written findings of fact and conclusions of law on September 5, 2012. The Auditor found that the address at which Camarata registered was a vacant lot used for parking for the Kittitas County Fairgrounds. And, the Auditor concluded that the documentation submitted by Higashiyama proved by clear and convincing evidence that Camarata did not reside at the registered address: 1001 E. 8th Ave., (#4), Ellensburg, WA 98926.

Camarata filed a petition for review with the Thurston County Superior Court. The superior court found that the Auditor followed the required statutory procedures and that the Auditor's decision was supported by substantial evidence. The superior court affirmed the Auditor's decision. Camarata appeals.[1]

ANALYSIS

A.    STANDARD OF REVIEW

We review the Auditor's decision on a voter registration challenge as an administrative action under the Washington Administrative Procedure Act, chapter 34.05 RCW. RCW 29A.08.840(6). The party challenging the agency action bears the burden of demonstrating the agency action's invalidity. RCW 34.05.570(1)(a). We may reverse an agency action if the action

---

[1] On November 14, 2014, we ordered the parties to file supplemental briefing on whether Camarata's felony conviction rendered this case moot. Under RCW 29A.08.520(1), Camarata's right to vote was automatically, provisionally restored at the time he filed the voter registration at issue here. Accordingly, this appeal is not rendered moot.

4

is unconstitutional, the agency has erroneously interpreted or applied the law, or the agency's order is not supported by substantial evidence. RCW 34.05.570(3)(a), (d), (e). We sit in the same position as the superior court and review the record before the agency. *Mader v. Health Care Auth.*, 149 Wn.2d 458, 470, 70 P.3d 931 (2003).

Many of Camarata's issues require us to engage in statutory interpretation. Statutory interpretation is a question of law we review de novo. *Lake v. Woodcreek Homeowners Ass'n*, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). The purpose of statutory interpretation is to determine and give effect to the legislature's intent. *Id.* To determine legislative intent, we first look to the statute's plain language. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002). In determining the plain meaning, we must consider "the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole." *Lake*, 169 Wn.2d at 526 (quoting *State v. Engel*, 166 Wn.2d 572, 578, 210 P.3d 1007 (2009)). If the plain language of the statute is unambiguous, our inquiry ends. *Id.* "But if the statute is ambiguous, 'this court may look to the legislative history of the statute and the circumstances surrounding its enactment to determine legislative intent.'" *Id.* at 527 (quoting *Rest. Dev., Inc. v. Cananwill, Inc.*, 150 Wn.2d 674, 682, 80 P.3d 598 (2003)).

B.    NOTICE

Camarata argues that the Auditor violated his due process rights by failing to provide proper notice under the statute. Camarata asserts that the Auditor violated the statute by (1) not mailing the notice to 1001 E. 8th Ave. (#4) or his father's address, and (2) not mailing all the required documents. We disagree.

RCW 29A.08.840 governs the procedures for voter registration challenges. If a voter registration challenge is filed, the Auditor must notify the challenged voter, provide a copy of the affidavit, and notify the challenged voter of the time and place of the hearing. RCW 29A.08.840(2). And, if the challenge is based on the residential address requirement, the Auditor must inform the challenged voter of "the exceptions allowed in RCW 29A.08.112 and RCW 29A.04.151, and Article IV, section 4 of the state Constitution." RCW 29A.08.840(2). "All notice must be by certified mail to the address provided in the voter registration record, and any other addresses at which the challenged voter is alleged to reside or the county auditor reasonably expects the voter to receive notice." RCW 29A.08.840(3).

Camarata's claims fail for two reasons. First, under the statute, the Auditor was not required to send notice by certified mail to either 1001 E. 8th Ave. (#4) or Camarata's father's address. Second, Camarata's claim that the Auditor could not have mailed the required documents is based on the incorrect assumption that the Auditor is required to send the challenge and all the supporting documentation when providing notice.

Camarata's first claim rests on his reading of the statute to mean: the Auditor must send notice by certified mail to every address associated with the challenged voter. This is not what the statute requires. The statute requires the Auditor to send notice "by certified mail to *the* address provided in the voter registration record." RCW 29A.08.840(3) (emphasis added). Voter registration requires both a residential address and a mailing address. The legislature's use of "the" to qualify the address to which notice should be mailed demonstrates that the legislature intended that the Auditor mail the notice to the challenged voter's designated mailing address. The Auditor

complied with this requirement by sending a notice, by certified mail, to Camarata's mailing address listed in his voter registration: General Delivery, Ellensburg, WA 98926.

The statute also requires that the Auditor mail a notice to any address at which the challenged voter was alleged to reside or the Auditor reasonably expects the voter to receive notice. Camarata argues that under this requirement the Auditor was required to send the notice to 1001 E. 8th Ave. (#4) and Camarata's father's address. But, the Auditor had no reasonable expectation that Camarata would receive notice at the 1001 E. 8th Ave. (34) address. The 1001 E. 8th Ave. (#4) address is not an address to which mail can be sent because the building was demolished and there is no longer an address designated as 1001 E. 8th Ave. (#4). And, the Auditor had no reason to believe that Camarata would receive notice at his father's address. The only reference to Camarata's father's address is in Higashiyama's incident report. Higashiyama lists Camarata's father as an additional contact during his investigation and included Camarata's father's address. Higashiyama does not reference Camarata's father in his narrative or affidavit. The Auditor sent notice by certified mail to every actual address at which Camarata indicated he could receive notice—his registered mailing address. The Auditor complied with the statutory requirements regarding notice.

Camarata also argues that the Auditor failed to comply with the statutory requirements for notice because the Auditor did not mail all the required documents when it mailed the notice to Camarata's mailing address. Camarata rests his argument on the amount of postage on the envelope combined with calculations based on the standard weight of paper. According to his calculations, the Auditor could not have mailed all the documents submitted with the voter

challenge for the amount of postage on the envelope. Even assuming that we accept Camarata's factual assertions and calculations underlying his argument, his claim lacks merit.[2]

Camarata's argument is based on interpreting RCW 29A.08.840(2) to mean that the Auditor must mail all the supporting documentation with the notice. We disagree. RCW 29A.08.840(2) requires that the notice include (1) the affidavit, (2) the time and place of the hearing, and (3) notification of the exceptions provided by statute and the constitution. Thus, the plain language of the statute only requires that the Auditor send the affidavit, the date and time, and the statutory exceptions. Here, the one page letter sent to Camarata included the date and time of the hearing and the statutory exceptions. And, the letter notes that the documents filed by the challenger are included. The document that the Auditor was required to send was Higashiyama's three-page affidavit. Therefore, the Auditor was required to enclose a total of 4 pages, not over 20 as Camarata suggests. Because the assumption underlying Camarata's entire argument is incorrect, it must fail.

C.     POSTING CHALLENGE ON AUDITOR'S WEBSITE

Camarata argues that the Auditor violated the requirements of RCW 29A.08.835 by failing to post the voter registration challenge and all the attached documentation on its website. Here, the Auditor posted the entirety of the voter challenge form that Higashiyama signed and filed with

---

[2] Camarata asks us to take judicial notice of fact obtained from sources such as "howstuffworks.com." Br. of Appellant at 14. Under ER 201, we may take judicial notice of adjudicative facts that are "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Facts regarding the weight of paper, or how much paper can fit in a particular envelope do not appear to be facts generally known in the jurisdiction and "howstuffworks.com" does not appear to be a source whose accuracy cannot reasonably be questioned. As a result, judicial notice is not appropriate.

the Auditor. Camarata argues that the statute required the Auditor to post all the supporting documentation on its website as well. But Camarata's interpretation of the statute is not supported by reading the statute within the statutory scheme as a whole.

RCW 29A.08.835 states, "The county auditor shall, within seventy-two hours of receipt, publish on the auditor's internet web site the entire content of any voter challenge filed under chapter 29A.08 RCW." RCW 29A.08.810(3) refers to the challenger's signed affidavit and factual basis for the challenge as "documents pertaining to the challenge," rather than as part of the challenge itself. RCW 29A.08.850 requires that the secretary of state provide forms for voter registration challenges; and the auditor and secretary of state are required to provide electronic templates for challenges. RCW 29A.08.840(1) states, "A challenge is not in proper form if it is incomplete on its face or does not substantially comply with the form issued by the secretary of state." Reading RCW 29A.08.810, .840, and .850 together indicate that "challenge" refers to the voter registration challenge form rather than the challenge and all supporting documentation.

Considering the references to the "challenge" within the statutory scheme as a whole, it appears that the legislature intended for "challenge" to refer to the actual voter registration challenge form rather than the challenge form and all the supporting documents. Here, the Auditor posted the entire content of Higashiyama's voter registration challenge form on their website. Therefore, the Auditor properly complied with the requirement that the entire content of the voter registration challenge be posted on the internet.

D.    AUDITOR'S INTERPRETATION AND APPLICATION OF THE LAW

Camarata argues that the Auditor improperly interpreted and applied the law regarding what qualifies as a residence for the purposes of voter registration. Camarata argues that the

Auditor could not cancel his voter registration because he had a nontraditional residence. Although Camarata is correct—a voter's registration may not be challenged or cancelled because the voter has a nontraditional residence—the voter must actually reside at the nontraditional address in order to register there. Here, Camarata did not actually register a nontraditional address, he registered a traditional address that did not exist. Moreover, Camarata did not reside there. Accordingly, the Auditor did not misinterpret or misapply the law.

In order to register to vote, the voter must provide a residential address. RCW 29A.08.010(1)(b). The residential address that the voter provides may be a traditional address or a nontraditional address. RCW 29A.08.010(2). RCW 29A.08.010(2) defines traditional and nontraditional addresses:

> A traditional address consists of a street number and name, optional apartment number or unit number, and city or town, as assigned by a local government, which serves to identify the parcel or building of residence and the unit if a multiunit residence. A nontraditional address consists of a narrative description of the location of the voter's residence, and may be used when a traditional address has not been assigned to the voter's residence.

No voter may be disqualified because he or she lacks a traditional address. RCW 29A.08.112. "[A] voter who resides in a shelter, park, motor home, marina, or other identifiable location that the voter deems to be his or her residence lacks a traditional address." RCW 29A.08.112. Voters who register with nontraditional addresses must still meet the constitutional requirement that "he or she live in the area for at least thirty days before the election." RCW 29A.08.112. And, RCW 29A.04.151 provides the exclusive definition of "residence" as it applies to voter registration:

> "Residence" for the purpose of registering and voting means a person's permanent address where he or she physically resides and maintains his or her abode. However, no person gains residence by reason of his or her presence or loses his or her residence by reason of his or her absence:

(1) While employed in the civil or military service of the state or of the United States;

(2) While engaged in the navigation of the waters of this state or the United States or the high seas;

(3) While a student at any institution of learning;

(4) While confined in any public prison.

Absence from the state on business shall not affect the question of residence of any person unless the right to vote has been claimed or exercised elsewhere.

Camarata argues that the Auditor misapplied the law because (1) once a person's residence is established, it remains their residence for the purpose of voter registration until a new residence is established, and (2) RCW 29A.08.112 allows a homeless person to register to vote at any arbitrarily chosen address. Both of Camarata's arguments are wrong. A person loses resident status by absence from a place unless he or she meets one of the statutory exceptions outlined in RCW 29A.04.151. And, to register to vote, a person must have a residential address, whether traditional or nontraditional. The Auditor did not misinterpret or misapply the law.

According to Camarata, 1001 E. 8th Ave was his residence when it was still an apartment building; therefore, the Auditor misapplied the law because a person is permitted to register to vote at the last address considered that person's residence unless or until the person establishes a new residence. Camarata's argument is contrary to the plain language of RCW 29A.04.151.

First, RCW 29A.04.151 specifically requires that the person physically reside at the place of residence. Second, RCW 29A.04.151 provides five specific occasions in which a person's absence from his or her residence does not result in the loss of residence. Therefore, it follows that if a person is absent from the residence for some other reason, he or she may no longer claim that place as his or her residence. Camarata does not allege that he was not present at 1001 E. 8th Ave. (#4) because of any of the reasons listed in the statute. Therefore, the Auditor did not err by

determining that Camarata can no longer claim that 1001 E. 8th Ave. (#4) is his residence because of his lack of presence there.

Camarata also argues that RCW 29A.08.112 allows a homeless person to register anywhere because a person may not be denied the right to vote because he or she lacks a traditional residence. Camarata is mistaken.

RCW 29A.08.112 does not allow the homeless to register at any arbitrarily chosen address without residing at the address. "Traditional" and "nontraditional" addresses are given very specific definitions in RCW 29A08.010(2). Regardless of whether a person has a traditional or nontraditional residence, the statute is clear and unambiguous—a person must register a residential address, traditional or nontraditional, meeting the definition in RCW 29A.04.151. RCW 29A.08.112 simply provides that the residence may be designated by either a traditional address (consisting of street name and number) or a nontraditional address (designated by a narrative description) and that having a nontraditional address is not a basis for cancelling a person's voter registration. Here, the Auditor cancelled Camarata's right to vote because he did not reside at 1001 E. 8th Ave. (#4), not because Camarata attempted to register to vote at a nontraditional address. Therefore, RCW 29A.08.112 does not bar the cancellation of his voter registration.

E.    SUBSTANTIAL EVIDENCE

Camarata argues that the Auditor's decision was not supported by substantial evidence because the evidence did not include an affidavit from the owner, manager, resident, or employee of the challenged registration address. Camarata's argument fails.

To file a challenge based on the challenged voter's failure to reside at the registered residential address, the challenger must either:

12

(i) Provide the challenged voter's actual residence on the challenge form; or

(ii) Submit evidence that he or she exercised due diligence to verify that the challenged voter does not reside at the address provided and to attempt to contact the challenged voter to learn the challenged voter's actual residence, including that the challenger personally:

(A) Sent a letter with return service requested to the challenged voter's residential address provided, and to the challenged voter's mailing address, if provided;

(B) Visited the residential address provided and contacted persons at the address to determine whether the voter resides at the address and, if not, obtained and submitted with the challenge form a signed affidavit subject to the penalties of perjury from a person who own or manages property, resides, or is employed at the address provided, that to his or her personal knowledge the challenged voter does not reside at the address as provided on the voter registration;

(C) Searched local telephone directories, including online directories, to determine whether the voter maintains a telephone listing at any address in the county;

(D) Searched county auditor property records to determine whether the challenged voter owns any property in the county; and

(E) Searched the statewide voter registration database to determine if the voter is registered at any other address in the state.

RCW 29A.08.810(c).

Based on RCW 29A.08.810(c), Camarata argues that the Auditor's decision was not supported by substantial evidence because Higashiyama did not submit an affidavit from the owner of the property with personal knowledge that Camarata did not reside at 1001 E. 8th Ave. (#4).[3] But, Camarata misunderstands the requirements of RCW 29A.08.810(c).

---

[3] We note that on the challenge form, Higashiyama listed "transient, Yakima" as Camarata's residence, presumably based on what Camarata told him. CP at 31. If the challenger provides the challenged voter's "actual residence," the challenger does not need to meet the additional requirements for demonstrating due diligence. RCW 29A.08.810(c). Because RCW 29A.08.810(c) does not provide the specific elements of proving improper voter registration, we do not address whether "transient, Yakima" is sufficient to fulfill RCW 29A.08.810(c)(i), relieving the challenger of the burden of demonstrating due diligence.

The requirements of RCW 29A.08.810(c) are threshold requirements necessary for the Auditor to determine whether to dismiss the challenge or set a hearing. *See* RCW 29A.08.840(1), (2). However, once the Auditor grants a hearing, the evidence must simply establish, by clear and convincing evidence, that the voter registration is improper. RCW 29A.08.840(4). If neither the challenger nor the challenged voter appears at the hearing, the Auditor must resolve the challenge based on the available facts. RCW 29A.08.840(4). Therefore, the relevant question in this challenge is whether there is substantial evidence in the record supporting the Auditor's decision that Camarata's registration is improper. "An agency order is supported by substantial evidence if there is 'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" *Hardee v. Dep't of Soc. & Health Servs.*, 172 Wn.2d 1, 7, 256 P.3d 339 (2011) (internal quotation marks omitted) (quoting *Thurston County v. W. Wash. Growth Mgmt. Hearings Bd.*, 164 Wn.2d 329, 341, 190 P.3d 38 (2008)).

As noted above, a residential address is required to register to vote. Camarata registered his address as 1001 E. 8th Ave. (#4). Therefore, for Camarata's voter registration to be proper, he had to reside at 1001 E. 8th Ave. (#4). Conversely, to find that Camarata's voter registration was improper, the facts available to the Auditor had to establish by clear and convincing evidence that Camarata did not reside at 1001 E. 8th Ave. (#4).

Higashiyama's affidavit established that the residential building that had once existed at 1001 E. 8th Ave had been completely demolished and the property is now a parking lot owned and used by the Kittitas County Fairgrounds. Higashiyama stated that he visited the property and there were no living structures on the property. And, Higashiyama confirmed that no person was currently living or permitted to live on the property. Based on these facts, there is substantial

evidence supporting the Auditor's determination that 1001 E 8th Ave. (#4) was not an address where Camarata physically resided and maintained his abode as required by RCW 29A.04.151. Thus, 1001 E 8th Ave. is not a proper residence for the purposes of registering to vote. Substantial evidence supports the Auditor's determination that Camarata's voter registration was improper.

F.    APPEARANCE OF FAIRNESS

Camarata also argues that the Auditor's decision violates the appearance of fairness. Camarata's argument is baseless.

The appearance of fairness doctrine applies to judges in court proceedings. *See State v. Gamble*, 168 Wn.2d 161, 187, 225 P.3d 973 (2010) (holding that a judicial proceeding is only valid if a reasonable person would conclude that the parties received a fair and impartial hearing). It is also statutorily created for local land-use administrative proceedings. RCW 42.36.010. Camarata argues that we should apply the appearance of fairness doctrine in this context as well. Because Camarata presents no support for his appearance of fairness claim, we do not extend the appearance of fairness doctrine to include Auditor's decisions on voter registration challenges.

Even assuming that the appearance of fairness doctrine applies here, Camarata has not demonstrated any actual or potential bias on behalf of the Auditor. To support his claim that the Auditor violated the appearance of fairness doctrine, Camarata must provide evidence of the Auditor's actual or potential bias. *State v. Post*, 118 Wn.2d 596, 826 P.2d 172, 837 P.2d 599 (1992). Here, Camarata argues that the Auditor violated the appearance of fairness because the prosecutor's office reported the allegation of voter registration fraud to the police department. But, Camarata has not explained how this indicates bias on behalf of the Auditor. Moreover, RCW 29A.08.810(2) expressly authorizes the county prosecuting attorney to challenge a person's right

to vote. Therefore, there is no basis for Camarata's contention that the Auditor's decision violated the appearance of fairness because the original complaint was referred by the prosecuting attorney.

ATTORNEY FEES

Camarata argues that he is entitled to attorney fees under RCW 4.84.340, .350, and .360 which allow for attorney fees in judicial review of agency action. Under RCW 4.84.350(1), a party who prevails in a judicial review of agency action is entitled to attorney fees. Here, we affirm the Auditor's decision cancelling Camarata's voter registration. Therefore, Camarata is not the prevailing party and is not entitled to attorney fees under RCW 4.84.350(1).

We affirm the Auditor's decision cancelling Camarata's voter registration, and we deny his request for attorney fees.

_____
Lee, J.

We concur:

_____
Johanson, C.J.

_____
Maxa, J.