

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In re the Marriage of:

JANETTE R. PEACOCK,

          Respondent,

and

WILLIAM R. PEACOCK,

          Appellant.

No. 71953-0-I
(consolidated with
No. 73150-5-I)

DIVISION ONE

UNPUBLISHED

FILED: <u>March 28, 2016</u>

Cox, J. — William Peacock appeals the decree of dissolution and the order denying his CR 60(b) motion to vacate that decree. Because the trial court did not abuse its discretion in either decision, we affirm.

Janette Wells[1] and William Peacock married in 1994. Wells petitioned for dissolution of marriage in 2012. Peacock requested appointed counsel "pursuant to GR 33 due to cognitive and mental [health] impairments." The trial court granted this request, appointing Elise Buie to represent him.

In January 2014, Buie e-mailed the trial judge's bailiff for guidance, stating there were no remaining funds, which were disbursed on the basis of her appointment, to take Wells's deposition. Further e-mail communications between counsel and the bailiff ensued.

---

[1] We adopt the parties' naming conventions.

The next day, the bailiff e-mailed both counsel to schedule a pre-trial conference. At the conference, the trial judge discussed with counsel how the case should proceed due to the case's "unusual trajectory" and approaching March 2014 trial date. The judge stated that she was authorized to grant Buie a limited amount of additional attorney fees and that counsel needed "to move as efficiently as possible."

The judge was also concerned about the scheduled mediation. She stated that it may be "most efficient" for her to hear and decide the case, and that the parties were "free to negotiate on their own." The judge ultimately waived the mediation.

She also prohibited depositions without her prior approval, stating she did not "see a reason for a deposition [of Wells] in this case" and that "a lot of money and time and energy has already been spent."

At Peacock's request, the judge granted his motion for new counsel, who was substituted for Buie. The judge also extended the discovery deadline.

The trial judge heard the case on March 17 to 19. The judge entered findings, conclusions, and a decree of dissolution on April 18, 2014. Peacock appealed.

He later moved under CR 60(b)(11) to vacate the dissolution decree. A different judge heard this motion. The motion judge denied Peacock's request for relief and awarded Wells attorney fees for responding to the motion. Peacock also appealed this order.

We consolidated both appeals for decision.

Peacock's dissatisfaction with the trial judge's distribution of property is at the core of these appeals. Accordingly, we first address his challenges to the findings, conclusions, and decree of dissolution.

## DISTRIBUTION OF ASSETS

Peacock argues that the overall distribution of assets is inequitable because it does not leave the parties in similar positions. We hold that the trial judge properly exercised her discretion in distributing the parties' assets.

In dissolution proceedings, the trial court "has broad discretion to make a just and equitable distribution of property based on the factors enumerated in RCW 26.09.080."[2] We defer to trial courts "because '[t]he emotional and financial interests affected by such decisions are best served by finality . . . .'"[3] Additionally, the "'policy interest favoring finality in property settlements' militates against setting aside dissolution decrees, except in . . . 'extraordinary circumstance[s].'"[4]

Under RCW 26.09.080, courts must equitably distribute the parties' property and liabilities after considering all "relevant factors." The factors listed in the statute "are not exclusive."[5]

---

[2] In re Marriage of Wright, 179 Wn. App. 257, 261, 319 P.3d 45 (2013).

[3] In re Parentage of Jannot, 149 Wn.2d 123, 127, 65 P.3d 664 (2003) (internal quotation marks omitted) (quoting In re Parentage of Jannot, 110 Wn. App. 16, 21, 37 P.3d 1265 (2002)).

[4] Wagers v. Goodwin, 92 Wn. App. 876, 882, 964 P.2d 1214 (1998) (quoting In re Marriage of Jennings, 91 Wn. App. 543, 548, 958 P.2d 358 (1998)).

[5] In re Marriage of Larson, 178 Wn. App. 133, 138, 313 P.3d 1228 (2013).

Each spouses' economic circumstances upon dissolution is "of 'paramount concern.'"[6] The court "is not required to place the parties in precisely equal financial positions . . . ."[7] "A just and equitable division 'does not require mathematical precision, but rather fairness, based upon a consideration of all the circumstances of the marriage, both past and present, and an evaluation of the future needs of [the] parties.'"[8]

We review for abuse of discretion the trial court's disposition of property.[9] The trial court abuses its discretion when its "decision is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'"[10] A trial court's "decision is based 'on untenable grounds' or made 'for untenable reasons' if it rests on facts unsupported in the record or was reached by applying the wrong legal standard."[11] We do not decide witness credibility or reweigh the evidence on appeal.[12]

---

[6] Urbana v. Urbana, 147 Wn. App. 1, 11, 195 P.3d 959 (2008) (quoting In re Marriage of Olivares, 69 Wn. App. 324, 330, 848 P.2d 1281 (1993)).

[7] Wright, 179 Wn. App. at 262.

[8] Larson, 178 Wn. App. at 138 (quoting In re Marriage of Crosetto, 82 Wn. App. 545, 556, 918 P.2d 954 (1996)).

[9] Wright, 179 Wn. App. at 261.

[10] State v. Gentry, 183 Wn.2d 749, 761, 356 P.3d 714 (2015) (internal quotation marks omitted) (quoting Wilson v. Horsley, 137 Wn.2d 500, 505, 974 P.2d 316 (1999)).

[11] Hundtofte v. Encarnacion, 181 Wn.2d 1, 6-7, 330 P.3d 168 (2014) (internal quotation marks omitted) (quoting State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)).

[12] In re Welfare of A.W., 182 Wn.2d 689, 711, 344 P.3d 1186 (2015).

Here, the trial judge awarded Wells the former marital home together with certain retirement accounts and other personal property. The judge also awarded Peacock other retirement accounts and other personal property. In making these allocations, the trial judge stated in her findings that she considered the parties' ages, health, and current financial circumstances. We see nothing in this record that undercuts the judge's stated approach in distributing assets.

Peacock challenges this distribution on two bases: first, on what he claims is the ratio of distributed shares of property to each other; second, on the trial judge's valuation of the former marital home. Neither claim has merit.

First, he claims the distribution favors Wells by a ratio of 42/58. He states that the judge's "rigid division of separate and community property did not take into account the relative health and earning capacit[ies] of the parties."

This claim is unsupported by the record. For example, unchallenged findings 2.21.3 and 2.21.5 detail Peacock's health challenges, his work history, and his expectation to not work again. We also note that the trial judge denied Wells's request for attorney fees at trial based on Peacock's alleged intransigence. The court denied fees because Peacock's health issues did not evidence intransigence.

It is noteworthy that the trial judge found that Peacock "diminished community assets imprudently," finding that he "used and/or lost" $30,000 of community funds. Because this finding is unchallenged on appeal, it is a verity.[13]

---

[13] See id.

Assets disposed of before trial cannot be distributed at trial.[14] But in In re Marriage of Griswold, Division Three of this court found no abuse of discretion where the trial court characterized the proceeds from the wife's sale of her wedding ring before trial as community property and assigned the value to the wife.[15] Division Three of this court found no abuse of discretion by doing so even though the ring, and presumably the proceeds, did not exist at trial.

Here, the $30,000 did not exist as trial, and the judge credited Peacock with these community funds after finding that he "demonstrated financial mismanagement" and "used them for his separate benefit or lost them." Thus, the trial judge's claimed lack of equitable distribution is based, in part, on his squandering of community assets. This determination by the trial judge is not an abuse of discretion.

Peacock cites, without meaningful discussion, other cases in which a trial court awarded a greater share of community property either to an older, sicker spouse or a spouse with lesser earning capacity.[16] Of course, the fact that other courts, based on the facts and circumstances of other cases, chose to divide assets in ways other than the trial judge did in this case falls far short of showing that this trial judge abused her considerable discretion in distributing assets.

Peacock also argues that he received no "offset" for contributing to the children's Uniform Gift to Minors Act accounts. But he cites no authority

---

[14] In re Marriage of Kaseburg, 126 Wn. App. 546, 556, 108 P.3d 1278 (2005).

[15] 112 Wn. App. 333, 349, 48 P.3d 1018 (2002).

[16] In re Marriage of Rockwell, 141 Wn. App. 235, 243, 170 P.3d 572 (2007); Crosetto, 82 Wn. App. at 557.

indicating that an offset is required. Accordingly, we need not consider this argument.[17]

Peacock also argues that the trial judge failed to take into account his "exceptionally hard work over the years, which greatly benefited the community." He cites In re Marriage of Williams[18] as support, asserting that the trial court in that case offset the wife's waste of marital assets with her income contribution to the community.

That case is distinguishable because the husband did not want the wife's gambling debts included in their total liabilities.[19] The trial court balanced the wife's "extra income against her excessive spending" and included her gambling related debts in the total liabilities.[20] That is not the case here. So, the case does not support Peacock's argument.

Peacock also argues that Wells is younger, in good health, and should be able to obtain full-time employment. Conversely, he argues that he is in significant debt and will "most likely" be unable to work again.

He cites In re Marriage of Tower[21] to support his argument. In that case, this court determined that "a disproportionate community property award in favor of the . . . spouse with any significant earning capacity would be an abuse of

---

[17] See Darkenwald v. Emp't Sec. Dep't, 183 Wn.2d 237, 248, 350 P.3d 647 (2015); RAP 10.3(a)(6).

[18] 84 Wn. App. 263, 927 P.2d 679 (1996).

[19] Id. at 270.

[20] Id. at 271.

[21] 55 Wn. App. 697, 780 P.2d 863 (1989).

discretion were it not balanced by long-term maintenance [to the other spouse]."[22] Peacock uses this case to argue that the trial court did not award him maintenance to "ameliorate the inequitable property division."

But that case is distinguishable because the trial court "endeavored to fairly distribute the parties' limited assets without jeopardizing" the wife's eligibility for social security disability benefits.[23] Further, in this case, Peacock received "a secure and greater income and was awarded substantial cash assets, whereas [Wells] received the house, which benefits the children." And she was not working at the time of trial. Thus, the case he cites does not support his argument.

The second reason Peacock cites for the allegedly inequitable distribution is the trial judge's decision to value the former marital home based on the evidence presented by Wells. The judge's view of the evidence Wells offered is a credibility determination that we do not review.

In sum, Peacock has failed to show this is an extraordinary case that compels us to overturn the trial judge's exercise of her considerable discretion in dividing the parties' assets.

## MOTION TO VACATE DECREE

Peacock claims the motion judge abused her discretion by denying his CR 60(b) motion to vacate the decree. We hold that the motion judge properly exercised her discretion.

---

[22] Id. at 701.

[23] Id. at 700.

CR 60 governs relief from judgments or orders. CR 60(b)(11) provides that "[o]n motion and upon such terms as are just, the court may relieve a party . . . from a final judgment, order, or proceeding for . . . [a]ny other reason justifying relief from . . . the judgment." This section applies "'to situations involving extraordinary circumstances not covered by any other section of [CR 60(b)].'"[24] These extraordinary circumstances must relate to "'irregularities which are extraneous to [court action] or go to the question of the regularity of its proceedings.'"[25]

We review for abuse of discretion a trial court's decision to vacate a judgment or order under CR 60.[26]

### Appearance of Fairness

Peacock argues that the ex parte communication of Peacock's former counsel, Buie, with the trial judge's bailiff created an appearance of unfairness. We hold that he has failed in his burden to overcome the presumption that the trial judge was fair. Accordingly, he fails to show that the motion judge abused her discretion in denying his motion to vacate the decree.

---

[24] Tamosaitis v. Bechtel Nat'l, Inc., 182 Wn. App. 241, 254, 327 P.3d 1309 (quoting In re Marriage of Yearout, 41 Wn. App. 897, 902, 707 P.2d 1367 (1985)), review denied, 181 Wn.2d 1029 (2014).

[25] Tatham v. Rogers, 170 Wn. App. 76, 100, 283 P.3d 583 (2012) (internal quotation marks omitted) (quoting In re Marriage of Flannagan, 42 Wn. App. 214, 221, 709 P.2d 1247 (1985)).

[26] Jones v. City of Seattle, 179 Wn.2d 322, 360, 314 P.3d 380 (2013).

CR 60(b)(11) is appropriate to raise "a posttrial challenge based on a violation of the appearance of fairness doctrine . . . ."[27] This doctrine "applies to judges in court proceedings."[28] "Washington's appearance of fairness doctrine not only requires a judge to be impartial, it also requires that the judge appear to be impartial."[29] Washington courts "presume that judicial hearings and judges are fair."[30]

"A judicial proceeding satisfies the appearance of fairness doctrine only if a reasonably prudent and disinterested person would conclude that all parties obtained a fair, impartial, and neutral hearing."[31] The test is "objective" and "assumes that 'a reasonable person knows and understands all the relevant facts.'"[32] The claimant "'must submit proof of actual or perceived bias to support an appearance of impartiality claim.'"[33] "[M]ere speculation is not enough."[34]

---

[27] Tatham, 170 Wn. App. at 103.

[28] Camarata v. Kittitas County, 186 Wn. App. 695, 713, 346 P.3d 822 (2015).

[29] Tatham, 170 Wn. App. at 80.

[30] In re the Disciplinary Proceeding Against Petersen, 180 Wn.2d 768, 787, 329 P.3d 853 (2014).

[31] Tatham, 170 Wn. App. at 96.

[32] Gentry, 183 Wn.2d at 762 (internal quotation marks omitted) (quoting Sherman v. State, 128 Wn.2d 164, 206, 905 P.2d 355 (1995)).

[33] GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 154, 317 P.3d 1074 (quoting Magana v. Hyundai Motor Am., 141 Wn. App. 495, 523, 170 P.3d 1165 (2007), rev'd on other grounds, 167 Wn.2d 570, 220 P.3d 191 (2009)), review denied, 181 Wn.2d 1008 (2014).

[34] In re Estate of Hayes, 185 Wn. App. 567, 607, 342 P.3d 1161 (2015).

Ex parte communication, alone, is not enough to establish judicial bias or prejudice.[35] If ex parte contact occurs, the question still remains "whether a reasonable person who knew all relevant facts would conclude that [the judge] was actually prejudiced or appeared prejudiced."[36]

State v. Davis[37] is instructive. In that case, the issue was whether the trial judge abused his discretion by failing to recuse himself after communicating ex parte with prosecutors.[38] After granting the defense's request for continuance, the judge accelerated the trial date and spoke with prosecutors regarding their preparation of scheduling orders.[39] The defense argued that the ex parte contact was improper and that the judge violated the Code of Judicial Conduct, requiring recusal.[40] The State conceded that ex parte contact occurred but argued that it did not require recusal.[41]

The supreme court stated that a judge's ex parte communication warrants recusal when "the judge 'may have inadvertently obtained information critical to a central issue . . . ,' leading a reasonable person to question his impartiality."[42]

---

[35] State v. Davis, 175 Wn.2d 287, 307, 290 P.3d 43 (2012).

[36] Id.

[37] 175 Wn.2d 287, 290 P.3d 43 (2012).

[38] Id. at 305.

[39] Id. at 304.

[40] Id. at 305.

[41] Id.

[42] Id. at 307 (quoting Sherman, 128 Wn.2d at 206).

"[T]he content of the communication is key in evaluating whether the judge appears partial . . . ."[43]

The supreme court determined that the judge's communication did not reveal or imply a bias toward either party "or that his future rulings in the case would be affected."[44] The judge believed that his "decision to accelerate trial . . . was purely ministerial" and he "did not discuss any substantive issue . . . ."[45] The supreme court concluded that the judge's communication did not show bias toward the parties but rather, "a desire to complete the penalty phase of Davis's trial within a reasonable length of time . . . ."[46] "If the desire to finish trial within a reasonable amount of time shows prejudice, trial judges would be forced to grant every continuance a defendant requested in order to avoid being considered partial. This is an untenable position."[47]

In re Marriage of Davison[48] is also instructive. In that dissolution case, the wife sent a letter to the judge before trial regarding a delay and expressing concern for her safety.[49] The judge then sent a letter to the parties' attorneys, with the wife's letter attached, stating that she expected the parties to be ready to

---

[43] Id. at 308.

[44] Id. at 307.

[45] Id. at 307-08.

[46] Id. at 308.

[47] Id.

[48] 112 Wn. App. 251, 48 P.3d 358 (2002).

[49] Id. at 255-56.

proceed.[50] The husband argued that the judge violated the Code of Judicial Conduct by considering the letter, that her impartiality was reasonably questionable, and that she should have disqualified herself.[51]

Division Three of this court disagreed, determining that there was no evidence "that the judge considered Ms. Davison's letter as anything other than a plea for a quick resolution of the matter. The judge's letter to the parties carefully avoided Ms. Davison's factual allegations, suggesting the court was not considering them as part of its disposition."[52] The court also determined that the "judge took no affirmative action to investigate the allegations" and that "[i]n the absence of at least an inference that the judge considered an improper communication, the judge's impartiality may not reasonably be questioned, and recusal is not required."[53]

Here, "a reasonably prudent and disinterested person would conclude that all parties obtained a fair, impartial, and neutral hearing."[54] First, Buie was appointed to represent Peacock pursuant to GR 33. Her e-mail to the bailiff described her concern regarding additional fees and further work to be done in Peacock's case based on this appointment. Specifically, the e-mail stated "As we stand now, there are no funds for [Wells's deposition] yet I was told by [sic]

---

[50] Id. at 255.

[51] Id. at 256-57.

[52] Id. at 257.

[53] Id.

[54] Tatham, 170 Wn. App. at 96.

that I was not appointed on a Pro bono basis in this matter. Again, guidance and/or a fee order is required in this instance."[55]

The e-mail also stated "If I am being order [sic] to work on a pro bono basis, please let me know that as that is contrary to what I was told . . . but will follow the Court's orders insofar as they align with my ethical duties as set forth in the RPC's as well."[56] Thus, the e-mail "was purely ministerial" and "did not discuss any substantive issue . . . ."[57]

Second, Peacock failed to show that the trial judge considered the e-mail "as anything other than a plea for a . . . resolution of the matter."[58] Specifically, Buie sought "guidance" or "clarification" from the trial court regarding her concern with complying with the court orders and her ability to work on Peacock's case.

Third, the trial judge's subsequent decision to set a pre-trial conference, suspend discovery, and waive mediation demonstrated her desire to have the case proceed efficiently. A judge always has discretion to control the administration of justice, including discovery and the requirement for mediation. Nothing other than Peacock's speculation shows anything unfair.

Thus, Peacock fails to overcome the presumption that the trial judge acted properly. Accordingly, the motion judge did not abuse her discretion in denying Peacock's motion to vacate.

---

[55] Clerk's Papers at 167.

[56] Id. at 168.

[57] Davis, 175 Wn.2d at 308.

[58] Davison, 112 Wn. App. at 257.

Peacock argues that the trial court received "prejudicial information." He argues that Buie's e-mail essentially labeled him "as overly litigious," which "prejudiced the judge against him throughout the trial."

Although Buie's e-mail included copied language of recommended actions from Peacock's e-mail, the e-mail was, nevertheless, ministerial. It did not contain substantive, critical, or prejudicial information. Thus, "a reasonably prudent and disinterested person would conclude" that the trial court did not have an actual or perceived bias against Peacock due to Buie's e-mail.[59]

Peacock also argues that it "appear[ed] that the Court was influenced by these communications" because it rejected a majority of his testimony. Similarly, he argues that the e-mail "had a significant effect on the proceedings" because the trial court "immediately halted discovery," canceled Wells's deposition, and "generally sided with" Wells regarding the property division.

The trial judge's decision to suspend discovery and require approval before the parties conducted depositions was within the court's "authority to administer its affairs to achieve the orderly and expeditious disposition of its docket."[60] Additionally, "credibility determinations should be made by the trial court."[61] Thus, the trial judge was free to find Peacock's testimony not credible, or Wells's testimony more credible. Accordingly, the trial judge's "reject[ion]" of Peacock's testimony does not show that she was biased.

---

[59] Tatham, 170 Wn. App. at 96.

[60] Winston v. Dep't of Corrections, 130 Wn. App. 61, 66, 121 P.3d 1201 (2005).

[61] State v. O'Dell, 183 Wn.2d 680, 698 n.13, 358 P.3d 359 (2015).

*Conflict of Interest*

Peacock next argues that the manner in which Buie sought additional fees put her interests above his, creating a conflict of interest. Specifically, he argues that her disclosure of confidential information prejudiced him. We disagree.

Peacock fails to establish any nexus between the actions of the trial judge and the alleged actions of his former counsel. The necessary focus of a challenge to the trial judge's decision is the trial judge, not former counsel for Peacock. In the absence of any nexus, which is Peacock's burden to establish, we conclude that the motion judge did not abuse her discretion in denying his motion.

Additionally, RPC 1.7 governs conflicts of interests of counsel. RPC 1.7(a)(2) provides that "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if . . . there is a significant risk that" the lawyer's personal interest will materially limit the representation.

Even if Buie had a personal interest that materially limited her representation of Peacock, this is not a basis for relief under CR 60(b)(11). As previously stated, this rule applies to extraordinary circumstances relating to "'irregularities which are extraneous to [court action] or go to the question of the regularity of its proceedings.'" Peacock cites no authority demonstrating that RPC violations support vacating an order under CR 60(b)(11).

## ATTORNEY FEES

### Award at Trial

Peacock argues that the motion judge abused her discretion by awarding Wells attorney fees for having to respond to his motion. We disagree.

"The general rule in Washington is that attorney fees will not be awarded for costs of litigation unless authorized by contract, statute, or recognized ground of equity."[62] We may award fees under RCW 26.09.140 after balancing the financial needs of the spouse seeking fees against the other spouse's ability to pay.[63]

We review for abuse of discretion a trial court's award of attorney fees.[64]

The motion judge determined that Wells's low income and responsibilities for the parties' children "put her at an economic disadvantage." The judge also determined that Peacock had "a secure and greater income and was awarded substantial cash assets, whereas [Wells] received the house, which benefits the children." This was an appropriate determination based on the record then before the motion judge.

Peacock argues that this judge should not have awarded Wells attorney fees because Wells received a majority of the parties' assets and, as a result, was in a better position to pay. The simple response to this is that, as the trial

---

[62] Durland v. San Juan County, 182 Wn.2d 55, 76, 340 P.3d 191 (2014).

[63] In re Marriage of Kim, 179 Wn. App. 232, 256, 317 P.3d 555, review denied, 180 Wn.2d 1012 (2014).

[64] In re Recall of Piper, 184 Wn.2d 780, 786, 364 P.3d 113 (2015).

court stated, Peacock was in a better position to pay because Wells received less income and bore the parenting responsibilities.

There was no abuse of discretion by the motion judge awarding fees.

*Award on Appeal*

Wells requests attorney fees on appeal, arguing that Peacock's appeal was frivolous and that he was intransigent. We disagree.

RAP 18.9(a) provides for attorney fees if a party "files a frivolous appeal." "An appeal is not frivolous or brought for purposes of delay if it involves 'debatable issues upon which reasonable minds might differ.'"[65] "'An appeal that is affirmed merely because the arguments are rejected is not frivolous.'"[66]

A party's intransigence is an equitable basis for awarding attorney fees.[67] Courts grant attorney fee awards for intransigence when a party engages in "'foot-dragging' and 'obstruction' . . . or simply when one party made the trial unduly difficult and increased legal costs by his or her actions.'"[68] "'Intransigence' may also be shown by 'litigious behavior, bringing excessive motions, or discovery abuses.'"[69]

---

[65] O'Neill v. City of Shoreline, 183 Wn. App. 15, 26, 332 P.3d 1099 (2014) (internal quotation marks omitted) (quoting Olsen Media v. Energy Scis., Inc., 32 Wn. App. 579, 588, 648 P.2d 493 (1982)).

[66] Ensley v. Mollmann, 155 Wn. App. 744, 760, 230 P.3d 599 (2010) (quoting Halvorsen v. Ferguson, 46 Wn. App. 708, 723, 735 P.2d 675 (1986)).

[67] In re Marriage of Chandola, 180 Wn.2d 632, 656, 327 P.3d 644 (2014).

[68] Id. at 657 (alteration in original) (internal quotation marks omitted) (quoting In re Marriage of Katare, 175 Wn.2d 23, 42, 283 P.3d 546 (2012)).

[69] In re the Matter of Kelly, 170 Wn. App. 722, 740, 287 P.3d 12 (2012) (quoting In re Marriage of Wallace, 111 Wn. App. 697, 710, 45 P.3d 1131 (2002)).

On this record, we conclude that this appeal is not frivolous. Although we disagree with Peacock's arguments, that alone is not a proper basis for us to award fees. Moreover, there is no showing of intransigence.

Wells did not expressly request attorney fees on appeal based on RCW 26.09.140. To the extent that Wells's submission of her financial declaration is an implicit request for fees based on this statute, we conclude that Peacock does not have the present ability to pay.

We affirm the trial court in all respects. We also deny Wells's request for attorney fees on appeal.

Cox, J.

WE CONCUR:

Leach, J.

Appelwick, J.